## EAST ATLANTA LAND COMPANY *v.* MOWER *et al.*
## HURT *v.* MOWER *et al.*

1. Where an action is brought against two persons, and each files a separate demurrer, both of which are overruled, each party has the right to except to the overruling of the separate demurrer filed by him, and to file a separate bill of exceptions, if he so desires.

2. Civil Code § 5541, as to setting out copies of contracts, obligations to pay, or other writings which constitute the cause of action, or the basis of the relief prayed for, applies only where the instrument sued on constitutes the cause of action, or the basis of the relief prayed.

(a) The plaintiffs allege themselves to be the owners of the property appurtenant to the parks dedicated, and to have an easement in such parks; and the object of the suit is to protect such easement. The easement is claimed, by virtue of a dedication of the parks to the public use. In such a case, copies of the plaintiffs' muniments of title are not required to be attached to the petition.

3. Where a number of people have a common interest in the result of a suit, they can all join in an action to assert their rights, and the parties being so joined does not make the case open to the objection that there is a misjoinder of parties plaintiff.

4. Where a petition clearly shows that certain lots within an incorporated city were sold by the original owners for residence purposes with reference to a plat showing not only the residence lots, but certain parks described thereon, which were intended to be dedicated to the public use, this would constitute a dedication of the parks to the public use, if the parks were accepted by the public.

(a) Persons who originally bought residence lots adjacent thereto with reference to such plats, and their grantees, would have an easement in such parks so dedicated.

(b) Such persons could join in an equitable petition to restrain the original owners of the lots and parks, and their grantees, from selling, or otherwise disposing of, or incumbering such parks; and to have a final decree declaring the parks to be public parks subject to public use,

and the petitioners and their assigns to have an easement in the same, without interference on the part of the grantors or their assigns.

(c) If the residence lots of plaintiffs were sold by the original owner to the original purchasers with reference to the plats containing a description of the parks, such original owner and his grantees are estopped from setting up a claim adverse to the right of private individuals who originally so purchased and their grantees, or to the public, to the use of the parks.

JULY 11, 1912.

Equitable petition. Before Judge Ellis. Fulton superior court. January 14, 1911.

*Payne, Little & Jones,* for plaintiffs in error.

*Hines & Jordan,* contra.

HILL, J. 1. The plaintiffs in error in the two cases herein dealt with were joint defendants in the same suit in the court below. Each of them filed a separate general demurrer in the case, both of which demurrers were overruled by the court, and the defendants filed separate bills of exceptions to the judgment overruling each separate demurrer. A motion was made in this court in each case to dismiss the bill of exceptions, on the grounds: (1) that it did not sufficiently appear in what case the bill of exceptions was sued out, and who were the parties to the suit; (2) that the other codefendant in the case below, who is separately excepting, was not made a party to the bill of exceptions; (3) that the case below could not be split up and two separate bills of exceptions filed. There is no merit in any of the grounds of the motion to dismiss; and the motion is accordingly overruled. Where an action is brought against two defendants, and each files a separate demurrer, both of which are overruled, each party has the right to test the ruling. If one of them files a bill of exceptions on the overruling of his demurrer, there is no method known to the law by which the other defendant can compel him to include in his bill of exceptions an assignment of error on the overruling of the demurrer of such second defendant. Therefore, where one defendant files such a bill of exceptions and does not assign error on the overruling of the demurrer of the other defendant, either the judgment last mentioned would stand as final against such other defendant, because no exception was taken to it, or else such defendant must have the right to except and test the question. Whatever might be the ruling on the writ of error upon the overruling of the one demurrer, the judgment so rendered, even though one of reversal,

would not in all cases set aside or affect the judgment rendered on the demurrer of the other defendant. See, in this connection, *Tate* v. *Goode*, 135 *Ga.* 738 (70 S. E. 571, 33 L. R. A. (N. S.) 310). In order that each defendant may exercise his right to except to the overruling of a separate demurrer filed by him, he must have the right to file a separate bill of exceptions. if he so desires.

2. One ground of the demurrer is that the plaintiffs have not attached to the petition "any exhibit of any alleged deed or plat mentioned in said petition," and that this is necessary in order properly to put defendants on notice. It is insisted that copies of the plats and deeds should be attached to the petition so as to enable the court to determine whether or not the plats would show such a designation of the places as parks as would be equivalent to a dedication. Our Civil Code, § 5541, declares: "Copies of contracts, obligations to pay, or other writings should be incorporated in or attached to the petition in all cases in which they constitute the cause of action, or the relief prayed for must be based thereon." This section, which is relied upon in support of the demurrer, has no application. It has application only where the original of the copy which is to be attached to the declaration constitutes the cause of action, or the basis of the relief prayed for. Here neither the deeds nor the plats or maps constitute the cause of action, or the basis of the relief prayed for. The basis of the present cause of action is the dedication and the relief sought under it, and not the plats or deeds. These are probably some of the evidences of the dedication, but not the dedication itself, and surely the evidence is not required to be attached. In 31 Cyc. 556-7, it is said: "In many States it is required that when a pleading is founded on a written instrument, the original or a copy thereof must be attached to or filed with the pleading. But no contract or other instrument need or should be filed or annexed which is not the foundation of the action or defense. Therefore instruments which are merely to be used as evidence do not generally fall within the statute. Instruments other than those contemplated by the statutes need not and can not be set up as exhibits under the statute." The petition alleges: "Said company represented to the original purchasers of said lots that said parks known as the Mesa, Triangle, and the Delta were parks, and would always be kept as such, and

that no one could ever build in front of the owners of lots fronting on said parks. On this representation of said company said original purchasers of said lots bought the same from said company, paying therefor high prices, by reason of said parks being in front of said lots; and said original purchasers and their vendees have constructed costly residences thereon, which they would not have done but for the fact that said company had dedicated said parks to the public, and assured the original purchasers that the same would always be used for that purpose." And in an amendment it was alleged: "Said dedication consisted in said company's laying off said land into lots, streets, and parks, making maps showing said lots, streets, and parks, and thereafter at public auction sale of said lots, and at private sales, making sales of said lots with reference to said maps, and by representing to the purchasers of said lots at said sales that said plats of ground were parks for public use and enjoyment." It will therefore be seen that the basis of the suit is the dedication. And the evidence of the dedication, as set out in par. 8 of the petition, was, "announcement in public and in private, and in newspapers in advertising said lots for sale, and by representation on plats of said property." Even if the maps and deeds were the basis of the action and it were necessary to attach copies, a perfect description of the parks is made and their location with reference to the lots of land of the plaintiffs is given in the petition, in which the boundaries of each is stated; so that the defendant is put as substantially on notice as to the property alleged to be dedicated as if the plats and maps were attached. The plaintiffs allege themselves to be the owners of the property appurtenant to the parks dedicated, and to have an easement in such public parks, and the object of the suit is to protect such easement. The easement is claimed by virtue of a dedication of the parks to the public use. In such a case, copies of the plaintiffs' muniments of title are not required to be attached to the petition.

3. As the same questions are involved in both cases, they will be considered together. In view of the amendment to the plaintiffs' petition in the court below, it will be necessary to consider only two questions presented by the record: (a) Whether there was a misjoinder of parties plaintiff in the case, as insisted by the plaintiffs in error. (b) Whether the petition shows specifically

such facts as would create a dedication by the East Atlanta Land Company of the park property described therein to the plaintiffs and the public for park purposes. We are clearly of the opinion that there was no misjoinder of parties. The rule seems to be well settled, that where a number of people have a common interest in the result of a suit, they can join in an action to assert their rights. In the case of *Blaisdell* v. *Bohr,* 68 *Ga.* 56, it was held, that "A bill is not multifarious because all of the defendants are not interested in all of the matters contained in the suit. It is sufficient if each party has an interest in some matter in the suit which is common to all, and that they are connected with the others," and "All persons who are directly or consequentially interested in the event of the suit are properly made parties to a bill in equity, so as to prevent a multiplicity of suits by or against parties at once or successively affected by the original case." And in discussing that case, on page 61, Justice Crawford said: "There was in this whole transaction but a single subject-matter—the twenty-three shares of stock. How and where the liability will fall, and what shall be the final determination as to the rights of these parties, are not the questions. All the parties are connected with it in the conveyance from the alleged true owner. They may all be heard, and their rights and liabilities settled in this one suit, and the whole matter finally adjudicated. 21 *Ga.* 6, 35 *Ib.* 208; Mitford & Tyler, 271-3; Dan. Ch. Pl. and Pr. 334; Story's Equity Pl. 271, 271 a. . . . All persons who are directly or consequentially interested in the event of the suit should be made parties. Persons are often necessary parties defendant to a suit, 'not because their rights may be directly affected by the decree if obtained, but because, in the event of the plaintiff succeeding in his object against the principal defendant, that defendant will thereby acquire a right to call upon him, either to reimburse him the whole or part of plaintiff's demand, or to do some act towards reinstating the defendant in the situation he would have been in but for the success of the plaintiff's claim.' This is done to avoid a multiplicity of suits, and requires the parties who may thus be consequentially liable to be brought in the first instance before the courts, that all the liabilities may be adjudicated and settled in one proceeding. 1 Dan. Ch. Pl. and Pr. § 283." In the case of *Conley* v. *Buck,* 100 *Ga.* 187 (28 S. E. 97), Justice Fish (now

Chief Justice) goes very exhaustively into the subject and cites a great number of authorities to sustain the ruling there made. It was there stated and ruled, on p. 187, that "An equitable petition by a judgment creditor against the defendant in execution and others alleged, in substance, that they had all entered into a conspiracy to defeat the collection of the debt upon which the judgment was founded, that the common object of all the conspirators was to 'hide' and 'cover up,' in the names of the coconspirators other than the defendant in execution, property which really belonged to him, and that in pursuance of this object various deeds had been executed purporting to convey specified parcels of realty to these coconspirators, which in fact belonged to the judgment debtor; the particulars in each instance being set forth. The petition prayed for the cancellation of the various conveyances which were, for the reasons stated, alleged to be fraudulent; and for a judgment subjecting all the property to the petitioner's execution. Held, that this petition was not demurrable as failing to set forth an equitable cause of action, nor as being multifarious, nor for want of sufficient fullness in stating wherein the alleged fraudulent acts of the several defendants consisted." Also, see p. 199 et seq., where numerous authorities are cited with approval. In 16 Cyc. 248, citing a number of authorities, including Georgia cases, it is stated that: "In order to permit a joinder of plaintiffs, it is not essential that their demands should be joint; it is sufficient if they are all interested, although distinctly, in the subject-matter and in the object to be attained. Indeed a common interest in the object to be attained may in itself be sufficient to sustain the joinder, as where several property owners unite to prevent the collection of an illegal tax, or the unlawful use of the street on which their property abuts. Plaintiffs having distinct interests, but whose titles are derived from a common source, may unite in a bill to protect against an attack reaching that common source. The fact that the injury to each is caused by the same act has been held to afford a sufficient connection to maintain a joint suit. It is also held that the plaintiffs may join, although their interests be separate, where the relief sought by each involves the same question, requires the same evidence, and leads to the same decree." See also 6 Pom. Eq. Jur. § 892; *Dart* v. *Orme,* 41 *Ga.* 377. In *Peoples National Bank* v. *Cleveland,* 117 *Ga.* 908, 916 (44 S. E.

20), it was said: "The rule is well established that where there is one connected interest, centering in the point in issue, or one common point of litigation, so that the joinder tends to prevent multiplicity of suits, unconnected parties may join in an action." It is alleged in the petition of W. K. Mower and others (fifteen in number): that the East Atlanta Land Company was the owner of a certain tract of land in the City of Atlanta, known as Inman Park; that said company graded and beautified the tract of land, laid it off into streets, parks, and lots, and sold many of the lots to plaintiffs and others for residence lots; that said company dedicated certain parks in said Inman Park to the public use and enjoyment of the public, among which were Mesa Park, the Triangle, and the Delta; that said dedication consisted of said company's laying off said land into lots, streets, and parks, making maps showing said lots, streets, and parks, and thereafter selling said lots at public auction and at private sales, making said sales of lots with reference to said maps, and by representing to the purchasers of said lots at such sales that said plats of ground were parks for public use and enjoyment; that all of petitioners are residents of said Inman Park, and own and reside on lots there, and have enjoyed the use and benefit of said parks ever since they became residents of Inman Park; that the East Atlanta Land Company represented to the original purchasers of said lots that said parks were parks and would always be kept as such, and that no one could ever build in front of the owners of lots fronting on the parks, and it was on this representation of the company that the original purchasers bought lots, paying high prices by reason of the parks being in front of said lots, and constructed costly residences thereon, which they would not have done but for the dedication and assurance that the parks would always be used for that purpose; that on March 26, 1896, the defendant conveyed to Alfred A. Glazier by deed the park known as the Mesa, who afterwards on April 26, 1896, conveyed said park by deed to Mrs. Annie E. Hurt (one of the defendants); that Mrs. Annie E. Hurt has never taken possession of or improved it by erecting structures thereon, or fencing the same, but it has remained a public park covered with grass, trees, shrubbery, etc., and has been enjoyed as such by the plaintiffs and other residents of Inman Park; that Mrs. Annie E. Hurt is the wife of Joel Hurt, who was and is the president of the East

Atlanta Land Company, and its chief promoter; that Mrs. Annie E. Hurt knew of the dedication of the parks to public use and enjoyment at the time she bought said portion of Mesa Park from Glazier, etc.; that the company is offering to sell the two parks known as the Delta and the Triangle for places for the erection of stores, houses, or any other purpose, etc.; that, unless enjoined, defendants will create a cloud upon the title of the plaintiffs and the public to said parks; that the sale of a portion of the Mesa to Annie E. Hurt constituted a cloud upon the title of the plaintiffs and the public to the park known as the Mesa; and that after a title is acquired by prescription, and the evidence to establish the dedication of the land as a public park has been destroyed, the purchasers will sell or improve it and destroy the park. Plaintiffs pray: (a) That defendants be restrained and enjoined from selling or otherwise disposing or incumbering the parks known as Mesa, Delta, and Triangle. (b) That the parks may be declared by final decree to be public parks, and their character as such confirmed, and the evidence thereof spread upon the records of the court. (c) That the cloud upon the title of petitioners and the public to the park known as Mesa may be removed by the decree of the court, and that the park may be declared as a public park, etc. From these allegations it appears that such a community of interest exists between the plaintiffs in the court below as that they could sue jointly in order to enforce the alleged rights they have; and this being true, the petition is not open to the objection that there is a misjoinder of parties plaintiff. Every one who bought an interest in that property, if bought as alleged in the petition, has an easement in those parks, and where an infringement of the rights of the purchaser or purchasers is shown, it affects the rights of all who are so situated, and all such may join in a bill to assert their rights. And neither the plaintiffs nor the public could be deprived of the right to the enjoyment of the use of the parks, if the lots were sold under the circumstances alleged in the petition and amended petition of the plaintiffs. The plaintiffs could not be deprived of the full enjoyment of the parks, if there has been a dedication and acceptance of the parks on their part, and on the part of the public.

4. Does the petition aver specifically such facts as would create a dedication by the East Atlanta Land Company of the three

parks described in the petition, to the plaintiffs and to the public use? Did the petition show that the lots were sold with reference to the plats, and that the parks described in the petition were represented on the plat at the time of the sale? Properly construed, we think the petition shows clearly that the sale of the lots was according to the plat, the substance of which was fully set forth; and if the parks were described or outlined on the plat, and the land was sold with reference thereto, then this would constitute a dedication of the parks to the public or to private use, as the case may be, or both, by the owner. It appears from the petition that the East Atlanta Land Company was the owner of a certain tract of land, now constituting that certain residence district in the City of Atlanta known as Inman Park, with the lots, streets, and parks mapped upon it. These lots, abutting upon the streets and parks, were sold by the company to the plaintiffs and others, and a valuable consideration paid therefor—a higher consideration, it is alleged, by reason of the dedication of the parks. Civil Code, § 4171, declares: "If the owner of lands, either expressly or by his acts, dedicates the same to public use, and the same is so used for such a length of time that the public accommodation or private rights might be materially affected by the interruption of the enjoyment, he can not afterward appropriate it to private purposes." This case has been treated as one of dedication, but, correctly speaking, there can be no dedication to a private use. "Dedication is the setting apart of land for the public use." 1 Elliott on Roads & Streets, § 122, and cases cited; *Ford* v. *Harris,* 95 *Ga.* 97, 100 (22 S. E. 144). But whether it is a case of dedication to a public or to a private use, the plaintiffs are asserting their right to an easement in the parks in controversy; and the result is the same to the plaintiffs, so far as their right to an easement in the parks is concerned. In the view we take of the case, if the lots were sold with reference to the plats which contained a delineation of the parks, and the original purchasers bought with reference thereto, the seller is estopped from setting up a claim adverse to the right of private individuals, or their assigns, who so bought, or to the right of the public to use the parks, if there has been a dedication and acceptance. 1 Elliott on Roads & Streets, § 146; *Schreck* v. *Blun,* 131 *Ga.* 489 (62 S. E. 705); *Mayor &c. of Macon* v. *Franklin,* 12 *Ga.* 239; and see Bou-

vier's Law Dict., "Estoppel in Pais," and cases cited. In 3 Dill.
Mun. Corp. (5th ed.) § 1107, it is said: "A consummated intent
on the part of the owner to dedicate is all that is required, and such
intent may be shown by parol evidence of declarations and of acts
in pais which unequivocally establish it. It may, we think, truly
be affirmed, that the doctrines of our law on this subject as fash-
ioned and settled by judicial tribunals, though in many respects
seemingly anomalous, are characterized by practical wisdom, and
are beneficent in their operation. Rightfully applied they work
no injury to the supposed dedicator, since they draw the line with
enlightened and considerate care between a just measure of his
rights on the one hand and the rights of the public on the other."
See also *Savannah &c. R. Co.* v. *Shields,* 33 *Ga.* 601 (4); *Schreck*
v. *Blun,* supra. In 1 Elliott on Roads and Streets (3d ed.), § 128,
it is said: "Dedication may be established against the owner of
the soil by showing that he has platted the ground, representing
streets and alleys on the plat, and has sold lots with reference to it,
or by showing that he has adopted a map or plat made by public
officers, or other persons, or by showing that he has sold lots de-
scribing them as bounded by a street or road. . . Ordinarily,
the sale of a single lot with reference to the plat will complete the
dedication." As to express and implied dedications, see same
volume of this work, §§ 133 et seq. Private corporations having
the right to own and deal with land usually have power to dedicate
roads and streets, or the like, to the public use. This is usually
true so long as it does not interfere with the purposes for which
the company was incorporated. 1 Elliott on Roads & Streets,
§ 101; 13 Cyc. 442; *Mayor &c. of Macon* v. *Franklin,* 12 *Ga.*
239. The doctrine of dedication of parks and public squares to
the public use has been so extended and applied as to give the
public an easement in parks and squares in cities and villages,
and this dedication may be effected in the same way as in the case
of streets and highways. 3 Dill. Mun. Corp. (5th ed.) §§ 1095,
1096, and cases cited. "R. Graves plotted a tract of land as build-
ing lots, selling some of them by reference to such plot; on this
plot was a small section marked 'Annette Park, now belonging to
R. Graves.' Held, that such section thereof became a public park
by dedication." Bayonne v. Ford, 43 N. J. L. 292. In the case
of Abbott v. Mills, 3 Vt. 521, 526 (23 Am. D. 222), Williams, J.,

said: "It is customary in laying out towns, particularly when it is contemplated that they will be places of business, to lay out a square or common, and to locate building lots bordering thereon. And these lots acquire an increased value in consequence of their location. If a village is built up, and individuals buy these lots, erect buildings, and commence the establishing of a village, and make it a common centre for the business of the town, the other lands in town rise in value, of which the proprietors have all the advantage. It would then be the height of injustice, and contrary to every principle of good faith, to permit these proprietors to derive this advantage, and then frustrate the expectations held out, by resuming the lands thus set apart, and at a value greatly enhanced in consequence of their having been thus set out." In Weger *v.* Delran, 61 N. J. L. 224, 226 (39 Atl. 730), it is said: "Bechtold had purchased a tract of land which included the locus in quo; that he had made a map of it, laying it off by streets into blocks; that he named it 'Plan of Bechtold's Fourth Addition to the Town of Progress;' that all the blocks except the locus in quo were divided into numbered lots; that it was distinguished from the other blocks by a different coloring, by the delineation of trees and paths, and by a rough representation of a fountain in the centre; that he had lithographed copies of the map made. . . Although the map did not designate this block in words, as a 'square' or 'park,' yet it contained persuasive evidence that it was intended for a different use than that to which the other blocks were designed to be put, and from Bechtold's acts and declarations, which were admissible evidence, there was the plain inference capable of being drawn that he intended to dedicate the block to public use, as was found by the trial judge in accordance with the cases in this State respecting the dedication of lands to public uses." See, to the same effect, Morrow *v.* Highland Grove Traction Co., 219 Pa. 619, 623-4 (69 Atl. 41, 123 Am. St. R. 677), where it was said, quoting from a previous decision: "Property may be dedicated for public use by plans indicating that purpose. Such dedication becomes irrevocable when the interest of third persons is acquired by sale of lots or acceptance for the public by public use or municipal action. Acceptance by the public need not be immediate, but may be made when public necessity or convenience arises. As a corrollary to this proposition it follows that it is not necessary

that the public use the entire property dedicated. Any public use of a part of the property, indicating a purpose to accept the gift, fixes the public right to the whole. When the public right has been acquired, it can not be lost by nonuser or by municipal action not expressly authorized by law. Any occupation of the property inconsistent with the public right is a nuisance, and no length of time will legalize a public nuisance." In Archer *v.* Salinas City, 93 Cal. 43, 50 (28 Pac. 839, 16 L. R. A. 145), Harrison, J., said: "The word 'park,' written upon a block of land designated upon a map, is as significant of a dedication, and of the use to which the land is dedicated, as is the word 'street,' written upon such map. The word carries with itself the idea of an open or enclosed tract of land for the comfort and enjoyment of the inhabitants of the city or town in which it is located, and is so defined by lexicographers. In England, the word, when applied to an inclosed tract of land in the country, has a different signification, and signifies that the lands inclosed are the private grounds of the proprietor. In this country, too, a man may inclose his own land and style it a park, or give that name to his place, without giving the public any right to its use, for in such a case there would be no semblance of dedication; but the meaning of a word is to be determined by the circumstances connected with its use. In London, as well as in any city in this country, the term 'park' signifies an open space intended for the recreation and enjoyment of the public, and this signification is the same whether the word be used alone or with some qualifying term, as Hyde Park, or Regent's Park, or, as in the present case, 'Central Park.'" In Price *v.* Plainfield, 40 N. J. L. 608, it is held: "The word 'park' written upon a block on a map of city property indicates a public use, and conveyances made by the owners of the plotted land, by reference to such map, operates conclusively as a dedication of the block." Authorities might be multiplied to the same effect. It follows from what has been said, and in view of the amendment filed by the plaintiffs, that the trial judge did not err in overruling the demurrers filed in each of the cases here considered.

*Judgment affirmed in both cases. All the Justices concur, except Lumpkin, J., disqualified.*