PULCIFER *v.* BISHOP.

1. DEDICATION—EASEMENTS—RIGHTS OF PURCHASERS OF LOTS—HIGHWAYS AND STREETS.

The mere making of sale of lots with reference to a map or plat prepared or adopted by the owner does not constitute an irrevocable dedication to the public, but amounts to a mere offer of dedication, which may be withdrawn if not accepted by the public within a reasonable time; but the platting and sale of lots constitute a dedication of streets, etc., delineated on the plat, as between the grantors and purchasers from them.

2. ADVERSE POSSESSION—USE OF RIVER BANK.

The owner of a piece of land separated from the river by a highway, who asserted ownership to the river bank in front of his parcel, and built and maintained a landing dock thereon, and performed many other acts consistent with ownership for more than the statutory period, and exercised all control over the premises that could reasonably be expected in view of their character and the tendency of people to make rather free use of shores and beaches, is entitled to title by adverse possession of said portion of the river bank.

Appeal from St. Clair; Law (Eugene F.), J. Submitted January 31, 1929. (Docket No. 112, Calendar No. 34,041.) Decided April 17, 1929.

Bill by Harriet N. Pulcifer and others against John Bishop and others to quiet title and determine property rights. Defendants Ernest Orttenburger and others and John Bishop filed cross-bills. From decree for plaintiffs, defendants appeal. Modified as to defendant Orttenburger.

*John B. McIlwain,* for plaintiffs.

*Bishop & Weaver,* for defendant Bishop.

*Walsh, Walsh & O'Sullivan,* for defendant Orttenburger.

CLARK, J. The bill and cross-bill seek, principally, quieting title and determination of certain property rights. Plaintiffs had decree. Defendants have appealed.

In 1899 James A. Green owned, title in fee, subject to mortgage, a parcel of land on St. Clair river in St. Clair county. A highway extended across the east end of this property, adjacent to and parallel with the river, which highway is now a paved trunk line known as St. Clair drive. A narrow strip of river bank, part of the parcel, was between the highway and the river itself; nearly all of the parcel was west of the highway. In 1900 Green executed and later placed on record a plat of the parcel in conformity with the statute, dividing it into 78 lots, all west of the highway, shown on the plat as St. Clair drive, and part of them fronting on the same. In the central part of the plat is a bottle-shaped piece of land, between two streets or "parkways," desig-

nated Oak Grove park, with the neck of the bottle 98.48 feet wide bordering on the highway. Immediately south of the southerly lots as shown by the plat is a street called "Greenwood avenue," and next south of that a "canal," and next south "lot A," which is from nearly 3 feet to nearly 6 feet wide and 994 feet long; its south line being the south boundary of the subdivision. It is said that this lot of strange shape was platted to deny access to the canal to occupants of land south of the subdivision. The dedication recites that streets and alleys are dedicated to the use of the public. The plat indicates no severance or reservation of the water front. St. Clair river is shown on the plat as adjoining St. Clair drive. The narrow strip or bank between the highway and the river is not delineated nor reserved on the plat.

Title to the subdivision was conveyed to Oak Grove Park Company, which company sold and conveyed all lots platted for sale. The deeds recorded contained a clause:

"The first party guarantees second party that he shall have access to the beach fronting said subdivision in common with the other lot owners in said subdivision."

Later the company gave quitclaim deed of the subdivision to Palmer, he in turn gave like deed to Oaks Land Company, and it in turn gave like deed to defendant Bishop, who claims to own the park site, the canal, the water front and lot A. The trial court decreed him to be the owner in fee thereof, subject, however, "to the easement, use, benefit, and enjoyment by the owners of lots in said plat."

Defendant Bishop complains of the decree as applied to the park and the canal, contending that

they have never been accepted by any public authority by use or otherwise, citing many of our cases. In this suit no claim of right is asserted for or against the public. If the owner of the subdivision had sold no lots, or if it had reconveyance to it of all lots sold, and if it then sought to close, as against the public, the streets, park, etc., a different question might appear.

As affecting the public, this court is committed to the rule, obtaining in many other States—

"That the mere making of the sale of lots with reference to a map or plat prepared or adopted by the owner does not constitute an irrevocable dedication to the public, but amounts to a mere offer of dedication, which may be withdrawn if not accepted by the public within a reasonable time." 18 C. J. p. 120.

But it is also the rule in this and other States that the platting and sale of lots constitute a dedication of streets, etc., delineated on the plat, as between the grantors and the purchasers from them.

It is said in Dillon on Municipal Corporations (5th Ed.), § 1090:

"In this connection it must be kept in view that the platting and sale create certain rights in the grantees of the original owner, which, as between the grantor and the grantee, are irrevocable in their nature.    *    *    *

"But other decisions recognize a *clearly defined distinction* between the rights acquired by the *public* through dedication effected by platting and sale, and the *private rights* acquired by the grantees by virtue of the grant or covenant contained in a deed which refers to a plat, or bounds the property upon a street through the grantor's lands. These decisions adopt the view that where lands are platted and sales are made with reference

to the plat, the acts of the owner in themselves merely create private rights in the grantees entitling the grantees to the use of the streets and ways laid down on the plat or referred to in the conveyance. But these rights are purely in the nature of private rights founded upon a grant or covenant, and no public rights attach to such streets or lands until there has been an express or implied acceptance of the dedication, evidenced either by general public user, or by the acts of the public authorities. In this view, the making of the plat and the sale of lands with reference thereto are merely evidence of an intent to dedicate, which like every other common law dedication, to be made complete and carried into effect so as to create public rights, must be accepted and acted upon by the public." Citing *Grandville* v. *Jenison,* 84 Mich. 54.

The cases cited by defendant and the rule contended for are not here applicable.

Lot A is of no practical value as a building lot. It is plain that it was not intended to be so used. The plat and the record indicate that it is a mere addition, adjunct, and protection to the canal, to be regarded as part of it. We are not persuaded that the decree in this regard should be changed.

Defendant's rights are fully protected by the decree, which in this respect is affirmed, with costs to plaintiffs.

Defendant Orttenburger, before the platting by Green, owned a piece of land 30 feet by 80 feet on the west side of the highway, which seems to have been overlooked in platting. His parcel is within the limits of the park delineated on the plat. He claims title by adverse possession to that part of the river bank across the highway and in front of his parcel. His evidence is that he built and maintained a landing or dock, and steps leading down

the bank to the same, that he installed a water pipe, that he cut weeds and kept clean that portion of the beach, and used the same, all this for many years, longer than the statutory period. He did it under a claim of ownership long asserted. The dock was replaced from time to time until about 1914, when he hired a spile driver and made a permanent dock extending into the river nearly 100 feet. There is evidence that he warned many people to keep off the premises in question. There is also evidence that some persons, especially his neighbors, used the dock and the beach at times without protest from said defendant. In view of the well-known tendency of people to make rather free use of shores and beaches, we think defendant exercised all control of these premises that reasonably could be expected in view of their character. The evidence satisfies the requirements of *Whitaker* v. *Shooting Club,* 102 Mich. 454, citing *Murray* v. *Hudson,* 65 Mich. 670:

"It is sufficient if the acts of ownership are of such a character as to openly and publicly indicate an assumed control or use such as is consistent with the character of the premises in question."

For discussion of applicable law see: *Austin* v. *McLain,* 232 Mich. 497; *Smith* v. *Feneley,* 240 Mich. 439; *Lawson* v. *Bishop,* 212 Mich. 691.

No other matter requires discussion.

The decree will be modified to quiet title in defendant Orttenburger to the premises here in question, with costs of this court against plaintiffs.

NORTH, C. J., and FEAD, FELLOWS, WIEST, McDONALD, POTTER, and SHARPE, JJ., concurred.