33175. SMITH v. BRUCE et al.
33181. ROWLAND HILLS CORPORATION et al. v. BRUCE et al.
33182. STATE OF GEORGIA et al. v. BRUCE et al.
33183. ROWLAND HILLS CORPORATION et al. v. BRUCE et al.

BOWLES, Justice.

Edward C. Bruce, Charles D. Bruce, Lucile Bruce Brown and Catherine H. Bruce filed their petition in the Superior Court of Glynn County, Georgia, to have certain described lands registered under the provisions of the Land Registration Law (Code Ann. § 60-101 et seq.), claiming title thereto in fee simple.

The original complaint claimed that there were no owners or occupants of the adjoining land because the tract sought to be registered was bounded on the east by the Atlantic Ocean, on the north and south by other lands owned by applicants and on the west by the easterly line of Dixon Drive as shown on a plat. However, the owners of lots lying west of and abutting on Dixon Drive were named and identified as defendants, as was Glynn County, a political subdivision of the State of Georgia and others similarly situated.

The parcel sought to be registered contains 26.4 acres, more or less, and is described according to a plat of survey made by John H. Ringling dated March 16, 1970, recorded in deed book 15-J, p. 688, of the public records of Glynn County, Georgia, bounded northeasterly by the southerly line of Ninth Street extending eastwardly, southeast by the high water mark of the Atlantic Ocean, southwest by the northerly line of First Street extended eastwardly, and northwesterly by the easterly line of Dixon Drive. Applicants claim title to this tract by a complete chain of title from the state or other original sources and attach an abstract to their complaint.

T. J. Dickey, Jr. was named as examiner by the court and he immediately qualified.

Rowland Hills Corporation and other parties filed a joint answer denying the pertinent parts of the application and as lot owners west of Dixon Drive denying that the applicants were entitled to the relief sought.

Some respondents claimed title to the questioned lands by gradual accretion, asking for a judgment establishing the property as belonging to the public by virtue of Code Ann. § 85-410; an easement running with the lands of defendants and others on East Beach similarly situated; and prayed for related relief.

Defendant Nellie Varner Smith counterclaimed, alleging that she was the owner of Lots Nos. 13 and 14 in Block 10, East Beach Subdivision, in which she claimed title to part of the lands east of Lots 13 and 14, and 8 by prior deed. She also claimed a private way ten feet in width over a portion of the lands claimed by the applicants from Lot 13 to the Atlantic Ocean; title to the lands east of her lots by gradual accretion; and a private way ten feet in width leading from Lot 8 to the Atlantic Ocean.

United Theater Enterprises, Inc., R. Beverly Irwin and Ethel S. Minter also counterclaimed similar rights to those claimed by Mrs. Smith, but with respect to Lots Nos. 11, 12, 13 and 184 in Block 12 of East Beach and claiming they had received a covenant from the common grantor of the parties that no construction of any building of any description would ever be permitted to be erected between the beach lots in said block and the Atlantic Ocean.

Robert L. Garges counterclaimed, alleging title to Lot 12, Block 10, a covenant against construction east of Dixon Drive and similar relief claimed by the other defendants.

Universal Insurers, Inc., with respect to Lots Nos. 11 and 12 in Block 8; John Roberts with respect to Lot No. 11 in Block 4; J. Weldon Weir Lot 12, Block 6; R. William Martin and T. Dozier Martin, Lot 11, Block 10, all claim similar relief by accretion, a private way, etc.

Certain motions to strike and dismiss were also filed by defendants.

The examiner filed a preliminary report, correcting and modifying the applicants' abstract in some respects, and ultimately filed a "final report" attaching his conclusions of fact and of law.

Thereafter, the State of Georgia filed a motion to intervene in the case which was denied, appealed to this court and reversed. See *State of Ga. v. Bruce,* 231 Ga. 783 (204 SE2d 106) (1974).

Following the state's intervention, hearings were held by the examiner during which the state offered oral testimony and documents in support of its claim that it is an abutting property owner on the seaward side and that the people of the State of Georgia, by continued and protracted use of the area known as East Beach, obtained a right in said area which the people through the State of Georgia now seek to protect. The state specifically sought a decree that the right of the people of the State of Georgia to use the area of East Beach continue uninterfered with and unobstructed.

The state amended its answer, filing a cross petition in its sovereign capacity as trustee for and guardian and representative of the people of the State of Georgia, in which it sought to have the parcel registered as property of the State of Georgia, or in the alternative, the state sought to have the parcel declared as subject to a right of use in the people of this state.

In its amendment to Count 1, the state contended that in the year 1914 the entire general area, including property lying immediately west of the property involved, was subdivided by a map prepared in 1914 by J. B. High. A plat thereof was recorded in the public records of Glynn County, Georgia, and a copy of the plat was attached to the counterclaim. The area between the mean high water line and the low water line was the property of the State of Georgia at the time of that survey and has remained the property of the state until this date.[1] Further, since the creation of East Beach Subdivision, the area east of the subdivision has been built up by accretion adding beach land to Beach Drive east of the center line. The state claims that the area platted as Beach Drive (Dixon Drive) and east thereof has been dedicated to the public, and is therefore property of the State of Georgia. Further, it alleges that the public has a right in and to the same by custom or "usage."

---

[1] This was not finally determined until this court decided the case of *State of Ga. v. Ashmore,* 236 Ga. 401 (224 SE2d 334) (1976).

On February 25, 1977, the examiner filed an "Amendment to the Final Report." The substance of the examiner's preliminary and final reports as supplemented approved the original moving parties' application for title, subject to certain specified restrictive covenants and easements across their lands and denying that the public has a right to use the disputed property.

All parties filed exceptions to the examiner's report and the state filed an additional motion in the superior court to disqualify the examiner. All respondents except the state, Glynn County, Nellie Varner Smith and Mary Endicott filed a motion for summary judgment for the reason that the evidence conclusively showed the title to the lands sought to be registered in them and other respondents adjacent to Dixon Drive by accretion following loss of the subject lands by erosion.

The superior court conducted a hearing on the exceptions of the various parties to the examiner's conclusions of law as well as motions for summary judgment which had been filed by certain of the lot owners claiming ownership of the disputed property pursuant to the decision of this court in *State of Ga. v. Ashmore*, 236 Ga. 401, supra.

The trial court denied all exceptions to the conclusions of law of all respondents, including those of the state and the county, but granted all exceptions as to conclusions of law by the petitioners. The order specifically held that respondent Nellie Varner Smith acquired no title to any of the disputed property and determined as a matter of law that one of the plats introduced and identified as a 1931 Torras plat did not establish the high water mark as being the same as the east side of Dixon Drive.

All motions for summary judgment were denied and an order was entered refusing the state's motion to disqualify the examiner. The court also entered a separate order in regard to the costs to be paid in the case prior to appeal. The respondent Nellie Varner Smith individually appeals to this court in Case No. 33175; Rowland Hills Corporation et al. in Case No. 33183; and the State of Georgia and Glynn County in Case No. 33182.

Rowland Hills Corporation et al. has also filed a cross appeal in Case No. 33181. All of these will be considered together.

The State of Georgia and Glynn County enumerate error as:

(a) The trial examiner's refusal to disqualify himself, and the trial court's refusal to disqualify him even though he acted as legal counsel for applicants in another matter during the pendency of this action;

(b) The court's conclusion, as a matter of law, that the plaintiffs acquired title in fee simple without encumbrances permitting use of the disputed beach and access thereto by members of the public;

(c) The court's failure to conclude, as a matter of law, that the land was expressly dedicated to the public for certain purposes by the three plats and by express statements of the plaintiffs' predecessor in title, which dedication has been accepted by the public;

(d) The court's ignoring uncontroverted evidence that citizens of the State of Georgia and County of Glynn had used the beach area including access paths throughout it from the time of accretion without interference, which established rights in the citizens to continue this beach area use for recreational purpose.

(e) The court's failure to conclude citizens acquired rights as a matter of law on the theory of custom.

Appellant Nellie Varner Smith contends the court's order is final as to her claim and enumerates as error:

(a) The court's holding that she has no right or title to land or interest to the land which has accreted in front of her lots on the east side of Dixon Drive to the Atlantic Ocean;

(b) The court's holding that the Torras map of 1931 did not, as a matter of law, establish the high water mark of the Atlantic Ocean as being the same as the east side of Dixon Drive as to the date of the plat;

(c) The court's overruling all exceptions to all respondents, including Smith, to the conclusions of law of the examiner;

(d) The court's holding Smith as one of the appellants required by law to pay costs of recording all documents besides the record on appeal, though not

actually recorded at that time, before the record on appeal would be sent to the Supreme Court;

(e) The judge's holding the clerk had the right to collect costs for recording whether or not the costs occurred before or after the clerk went on a salary basis;

(f) The court's holding that the clerk costs in this case were the property of the clerk individually, when at the time the clerk was on a salary basis as provided by law.

Rowland Hills Corporation and others as appellees and cross appellants complain of similar errors as follows:

(a) The denial of cross appellants' claims as owners of properties sought to be registered;

(b) The erroneous description of the property made by the examiner, who failed to find that the Gramling map was superseded by later maps, which maps would estop applicants from denying the location of streets, etc., delineating the east side of Dixon Drive to the Atlantic Ocean;

(c) The failure to hold as a matter of law, from the undisputed facts, that the westward migration of the Atlantic Ocean across Dixon Drive, and the later accretion eastwardly therefrom, gave to cross appellants no property rights;

(d) The failure to hold as a matter of law that the roadways (Second through Eighth Streets) shown to continue eastward on the east side of Dixon Drive (as shown on the Gramling plat) should be continued to a terminus at the high water mark of the Atlantic Ocean;

(e) The failure to hold that the claimed property was subject to restrictive covenants greater than those found by the examiner;

(f) The failure to find that the Land Registration Law (Code Ann. § 60-217) requires the services of a registered surveyor rather than a registered engineer.

Interlocutory appeal was granted in this case although all contested questions of facts have not been decided in the trial court.

We have made a careful study of this very long and tedious record, the evidence introduced and the documents relied on by the various parties in support of their various contentions. Factually, there is no great

conflict in the evidence. We think that the proceedings are largely controlled by certain facts which we believe to be without contradiction in the record and which we say as a matter of law will substantially control the outcome of these proceedings.

Except for the accreted lands, all parties are claiming title or property rights from a common source and, therefore, we will not comment on the status of the title prior to July 25, 1914, when Stanley Land Company, a corporation, conveyed the subject and adjacent lands to E. C. Bruce, describing them in part as, "[T]hat tract of land long known as 'east beach' particularly described, designated and identified according to map of same by J. B. High, civil engineer, attached hereto and made a part of this deed, . . ." That plat was introduced into evidence with the deed, and illustrates an undeveloped tract of land on St. Simons Island, Glynn County, Georgia, containing 130.2 acres, abutting on the Atlantic Ocean. Also introduced into evidence was a plat made in 1914 by J. B. High, civil engineer, laying out the St. Simons Island, East Beach Subdivision which subdivided substantially all of the purchase from Stanley Land Company to E. C. Bruce, and laid out numerous streets, cross streets and numbered lots. That plat denoted the eastern-most street nearest the Atlantic Ocean, running the length of the subdivision as "Beach Drive." This was apparently the first development of the subject lands. The plat showed adjoining Beach Drive a narrow strip of land about the mean high water line varying from approximately 300 feet wide to less than 25 feet wide. Between the mean high water line and the low water line on the plat are the words "Smooth, Hard Beach — 500 feet wide, 7,000 feet long." The area between the hard beach and Beach Drive traverses the entire length of the subdivision with each end touching a principal north-south street also running the length of the East Beach Subdivision. Without the use of this area by lot purchasers there would be no practical means of access from the developed lots and developed streets shown on the plat to the smooth, hard beach area of the Atlantic Ocean immediately east thereof. Beach Drive traverses the developed property the entire distance of the subdivision from north to south along the

east side of the lot areas, and there are numerous other streets laid out from east to west which dead-end on Beach Drive.

There is no reservation on the plat or attached thereto of any portion of the area between Beach Drive and the smooth, hard beach. There is a meandering line on the plat separating the smooth, hard beach area from the disputed area, which is designated "mean high water line." This would indicate that the line illustrates the average high water line, with the result that approximately half the time the tides rose above this line. Designating a portion of the area as smooth, hard beach would imply that the area above the "mean high water line" would be unsmooth, soft beach, or what is generally known as the loose sand area.

Mr. E. C. Bruce and his wife and sole devisee, Mrs. Lucy M. Bruce, conveyed lots in this East Beach Subdivision, specifically referring to the 1914 J. B. High plat and the place of record in book 3-G, page 390. Applicants in this case claim title to the disputed area by virtue of a quitclaim deed from Mrs. Lucy M. Bruce, with the exception of Mrs. Catherine Hasell Bruce who claims title under the Last Will and Testament of her husband, J. Robert Bruce, who in turn claimed under a quitclaim deed from his mother, Mrs. Lucy M. Bruce. All are successors in title to E. C. Bruce and Mrs. Lucy M. Bruce.

1. The appellate courts of Georgia have not dealt with a specific case involving the subdivision of land and the sale of lots by plats indicating the development to be a beach subdivision. On the other hand, there are many cases, and our law is clear, in regard to property rights arising when subdivision plats include streets, parks, lake fronts, and related amenities or attractive improvements, and where deeds are made with reference thereto.

In *Stanfield v. Brewton,* 228 Ga. 92 (184 SE2d 352) (1971), this court held: "Where the owners of a tract of land subdivide it into lots, record a map or plat showing such lots, with designated streets and a public park, and sell lots with reference to such map or plat, the owners are presumed to have irrevocably dedicated said streets and parks for the use of all of the lot owners in the subdivision.

"The owners of lots in the subdivision have an easement in these public areas whether or not there has been an acceptance of the dedication by public authorities or the public generally."

*Westbrook v. Comer,* 197 Ga. 433 (2, 3) (29 SE2d 574) (1944) holds: "Where a deed or grant refers to a plat as furnishing the description of the land conveyed, the plat itself and the words and marks on it are as much a part of the grant or deed, and control, so far as limits are concerned, as if such descriptive features were written out on the face of the deed or grant itself.

"In such circumstances it is not essential to the acquisition of such easement by purchasers of lots that there was a dedication of the alley to public use and acceptance by the public, as evidenced by its use."

In *Harrison v. City of East Point,* 208 Ga. 692 (69 SE2d 85) (1952), this court held that where the subdivider made and duly recorded a plat whereby the lots, streets and alleys were delineated, and sold the lots with reference to the plat, the purchasers acquired private property rights in the streets and alleys of the subdivision.

In our view, the purchasers of lots from Mr. or Mrs. Bruce or their successors in title, who received deeds referring to the 1914 J. B. High plat, acquired a private property right or easement of use, not only in the streets and alleys of the subdivision, but also in the beach area, including both the hard beach as far as legally possible, and the area of the soft beach between the mean high water line and the street designated as Beach Drive. In so holding, we recognize that all of the lots in these beach subdivisions were not sold with reference to the 1914 J. B. High plat. Applicants admitted, however, that several lots were sold based on that plat, and we conclude that the sale of a single lot with reference to the plat would complete the granting of an easement or an offer of dedication of the area to the public. See *East Atlanta Land Co. v. Mower,* 138 Ga. 380, 389 (75 SE 418) (1912).

It is logical that a person could not develop a beach subdivision without a beach. Unless the impetus of the plan was to afford buyers of lots an easement to the beach areas on the plat, the deeds made with reference thereto

would be deceptively misleading. "It would then be the height of injustice, and contrary to every principle of good faith, to permit those proprietors to derive this advantage, and then frustrate the expectations held out, by resuming the lands thus set apart, and at a value greatly enhanced in consequence of their having been thus set out." *East Atlanta Land Co. v. Mower,* supra, p. 390.

The naming of the subdivision, "East Beach Subdivision"; the subdividing of practically all of the land area owned except the beach area; the designating of the front or easternmost street as "Beach Drive"; the leaving of an open area between an area designated as "smooth, hard beach" and "Beach Drive" without any reservations; the entering on the plat "Atlantic Ocean"; the failure to afford otherwise any reasonable means of access from the lots and streets in East Beach Subdivision to the smooth, hard beach and ocean; the designation of a line as "mean high water line" between the area designated as smooth, hard beach and "Beach Drive"; and the selling of one or more lots referring to such area in the recorded plat, conveyed to each purchaser in the subdivision an easement, to use such open area as a soft beach for all recreational purposes soft beaches can be used for, and as a means of ingress and egress from the subdivision lots and streets to the smooth, hard beach area and ocean.

The applicants readily concede that the hard beach area was intended for the use of the purchasers of the lots, but they contend that this beach moved seaward because of the accretion and enlargement of the property in dispute. Are we to accept then, that before any accretion occurred, when tides from the ocean were above the mean high water mark shown on the plat there was no beach available to the lot purchasers? We think not.

In considering the basic question, we realize that some of the cases we rely on base their property rights on the theory of estoppel. See *Caffey v. Parris,* 186 Ga. 303 (197 SE 898) (1938). Others decide the question based on the grantee's acquiring an easement in the streets and park areas. See *Walker v. Duncan,* 236 Ga. 331 (223 SE2d 675) (1976). In this instance, it matters not whether the rights to use the property are acquired by estoppel or by

easement. The result is the same.

There may have been an offer of dedication of the area to the public by the recording of the subdivision plat. Therefore, conveyances thereunder would not only result in grants of easements to the purchasers of the property, but would also raise the presumption of intent to dedicate to the public. See *Ross v. Hall County Commrs.*, 235 Ga. 309 (219 SE2d 380) (1975); *Carroll v. DeKalb County*, 216 Ga. 663 (119 SE2d 258) (1961); *Savannah Beach, Tybee Island v. Drane*, 205 Ga. 14 (52 SE2d 439) (1949). However, to become public property the offer to dedicate to public use must be accepted by the public. Acceptance by the public presents a question of fact which is not settled in this opinion.

The activities of the subdivider and his successors in allowing access across the area; the making of deeds reciting that certain lots are bound on the east by the Atlantic Ocean; and the issuance of documents not to obstruct the view are merely additional evidence of the intent of the subdivider to grant easements in this open area. An intent on the part of the owner to dedicate must be manifested by the conduct of the owner from the facts and circumstances of the particular case, based upon the acts of the owner, and not upon what is secreted in his heart. *Dunaway v. Windsor*, 197 Ga. 705 (30 SE2d 627) (1944).

In *Smith v. Clay*, 239 Ga. 220 (236 SE2d 346) (1977), we held that where a property owner recorded a subdivision plat showing a street and sold lots pursuant to it, he, as a matter of law, created easements in favor of the property owners in the subdivision. Although the property in dispute here is an open area, when considered along with the circumstances and other details of the subdivision and the plat involved, we say as a matter of law that easements in the open area were granted in favor of the property owners in the subdivision.

All persons claiming under the first subdivider are forever estopped to deny the existence of the streets and the other areas designated for the common good of all purchasers of lots in the subdivision. See *Young v. Sweetbriar, Inc.*, 222 Ga. 262 (149 SE2d 474) (1966); *Tietjen v. Meldrim*, 169 Ga. 678 (151 SE 349) (1929);

*Rahn v. Pittman,* 216 Ga. 523 (1) (118 SE2d 85) (1961).

The Georgia cases support the broad view, as opposed to the narrow or "necessary" rule. However, under either view, the lot purchasers would prevail in this case. See 7 ALR2d 597.

There is substantial authority from other states reaching this same result. See Boothby v. Gulf Properties of Alabama (Fla.) 40 S2d 117; Oswald v. Grenet, 22 Tex. 94; Pulcifer v. Bishop, 246 Mich. 579 (225 NW 3); Schurtz v. Wescott, 286 Mich. 691 (282 NW 870); Threedy v. Brennan (Wis.) 131 F2d 488; Klein v. Dove, 205 Md. 285 (107 A2d 82); Yurmanovich v. Johnston, 19 Wis. 2d 494 (120 NW2d 707); State v. East Shores, Inc., 131 N. J. Super 300 (329 A2d 585).

2. A subdivider or his successors in title may resurvey and replat the unsold portions of property shown in the first subdivision. In doing so, he may generally enlarge upon the open areas, streets, and parks offered to be dedicated in the initial plat for public purposes or by express easements made appurtenant to the lots purchased, but he cannot restrict, diminish, or take away property rights theretofore granted by the first plat where deeds have been made with reference thereto. As we said in *Walker v. Duncan,* 236 Ga. 331, 332 (223 SE2d 675), "It is well-established that where a developer sells lots according to a recorded plat, the grantees acquire an easement in areas set apart for their use. *Tietjen v. Meldrim,* 169 Ga. 678 (151 SE 349) (1929). An easement acquired in this manner is considered an express grant, and is an irrevocable property right. The rationale is that the grantees of the property have given consideration for its enhanced value in the increased price of their lots." See also *Doughtie v. Dennisson,* 240 Ga. 299 (240 SE2d 89) (1977).

3. (a) The attempt by Mrs. Lucy M. Bruce, as successor in title to E. C. Bruce, to make certain reservations on the 1924 Gramling-McCormick plat that would be adverse to express property rights theretofore conveyed or offered for dedication by deeds referring to the 1914 J. B. High plat, is to no avail.

(b) Easements having been granted in the open beach area and there being a possible offer of dedication

and acceptance of this area for public use, the 1924 Gramling-McCormick map or plat reservations would not restrict the rights of those buying with reference to that map. The rights of these subsequent purchasers under the 1924 Gramling-McCormick map, as far as the streets, beach and open areas are concerned, are the same as those who purchased under the 1914 J. B. High plat, plus any enlarged or additional rights granted by the later map.

(c) Although we hold that the subdivider granted easements in the open area, and although there may have been an intent to dedicate the area to public purposes he nevertheless remained the technical owner of the underlying fee, the practical importance of which in this case is limited to the determination of ownership of the underlying fee under Beach or Dixon Drive. We conclude that the lot owners on the west side of Beach Drive or Dixon Drive would own in fee simple to the center of that drive, subject, of course, to the easements of other lot owners in both street halves. See *Owens Hardware Co. v. Walters,* 210 Ga. 321 (80 SE2d 285) (1954); *Tietjen v. Meldrim,* supra; *Harrison v. City of East Point,* supra. All rights in such street area may have been lost through erosion or avulsion as hereinafter discussed.

The trial court erred in approving, as a matter of law, that applicants held a fee simple title to the tract in question, subject only to the covenants and easements set out in the examiner's report.

4. The state moved to disqualify the examiner in this case because he has appeared as counsel for two of the applicants in a civil proceeding in June, 1975, some time after he filed the first "final report" in the case in October, 1974.

The Code of Judicial Conduct set forth in 231 Ga. A-1, Canon 3-C provides: "Disqualification: (1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned,. . ."

Accepting employment from one or more of the contesting parties to pending litigation ordinarily disqualifies the examiner sitting as a trier of fact and law in the case. However, there are certain mitigating circumstances in this case. The case has been pending since 1971 and what was intended as a speedy remedy is

now a six-year plus lawsuit, not yet completed. Prior to the employment of the examiner in a totally separate matter, he had conducted his preliminary duties, holding evidentiary hearings and filing a first report and a final report before the State of Georgia was allowed to intervene. After the state intervened he held further evidentiary hearings and subsequently filed another final report ruling on the state's contentions after the cited employment. The holdings in the last "final report" did not substantially differ from the result of the first "final report."

Practically no evidence offered by any party was excluded by the examiner and the record in the case appears complete. The courts can correct any erroneous conclusions of law. A jury trial has been requested by the parties on exceptions to findings of fact, and any errors in the factual area can be resolved in that manner.

The examiner has performed a tedious and time-consuming service. He enjoys an excellent reputation among the bench and bar of this state. To disqualify him at this late date would serve no purpose except to throw out all proceedings and start anew with another examiner. In our opinion, this will work an injustice on all parties. For these reasons the trial judge's decision in refusing to disqualify the examiner will not be disturbed.

5. The theory of custom has been adopted in very few jurisdictions, has never been recognized in Georgia and will not be adopted as the law of this state in this case. Our holding in *State of Ga. v. Ashmore,* supra, eliminates most of the necessities for such a theory.

6. Assuming the land area involved has not been heretofore destroyed through erosion by the westward migration of the ocean, we cannot say as a matter of law from the evidence introduced that the disputed area has been accepted by the public and, therefore, finally dedicated as a public beach or recreational area. The findings of fact excepted to in this regard must be determined by a jury under the provisions of the Land Registration Law, Code Ann. § 60-304.

7. Once an easement in a specific area is conveyed to lot owners in a beach subdivision as a beach or

recreational area, or such an area has been offered for dedication for public use and accepted by the public for such use it may, nevertheless, be lost by gradual erosion and avulsion. "When water so far encroaches on land that a tract which was formerly riparian is completely submerged or washed away and land formerly non-riparian becomes riparian, subsequent accretions belong to the owner of the tract newly made riparian even though such accretions in time extend into or over the area formerly owned by an adjoining, and the original riparian owner, according to the view of many of the courts which have considered the matter." 4 Tiffany, Law of Real Property, § 1224; Bone v. May, 208 Iowa 1094 (225 NW 367); Doebbeling v. Hall, 310 Mo. 204 (274 SW 1049, 41 ALR 382).

Some respondents offered evidence to show that all easements to the land had been lost by avulsion. The examiner did not agree that the evidence offered was sufficient to show the land area had been lost and respondents excepted to this finding. This issue of fact must also be tried by a jury. If a jury should find that the land in question has been lost through erosion or avulsion and the east half of Beach Drive (Dixon Drive) was likewise lost so that the mean high water mark had at one time moved inland beyond the west margin of said drive, then upon the land accreting again, each lot owner abutting the west side of said drive, and so affected, would gain title to the accreted land lying between the north and south parallel lines of their respective lots if extended easterly across Beach Drive (Dixon Drive) to the present mean high water mark. This is in keeping with our holding in *State of Ga. v. Ashmore,* supra. The facts as respects each lot could vary with resulting different jury verdicts.

8. Rights of lot owners covered in the preceding paragraph would be subject to the unresolved issues of fact to be tried by a jury, as to whether or not the accreted lands have been dedicated to public use, or have become subject to public or private prescriptive rights since the time of the accretion.

9. Additionally, should any of the lot owners prevail in the above respect, we hold as a matter of law that any

adjacent streets, numbered 1 through 9 on the 1924 Gramling-McCormick map, or the 1931 Torras map, and named otherwise on the 1914 J. B. High map, would also be extended eastwardly by accretion in the same manner and to the same extent as the lots. See State v. Yates, 104 Me. 360 (71 A 1018); Hoboken Land &c. Co. v. Mayor &c. of Hoboken, 36 N. J. L. 540; Dana v. Craddock, 66 N. H. 593 (32 A 757).

10.  Should a jury determine that the open area on the 1914 J. B. High plat has not been totally lost or destroyed by erosion or avulsion, then the following would be applicable: Gradual accretions of land from navigable tidewaters accrue to the adjacent land owner. Thus, the open land of the subdivision shown on the 1914 High plat over which we have held an easement was granted to the lot owners for soft beach purposes and as a means of ingress and egress to the hard beach, and which is subject to further determination as to whether it has been dedicated to public use for such purposes, would be subject to enlargement by any adjacent accretion, subject to the same easement rights in all of the subdivision lot owners, and subject to the same possibilities of public dedication. 26 CJS 525, Dedication, § 51; Ruge v. Appalachicola Oyster Canning &c. Co., 25 Fla. 656 (6 S 489); Peterson v. City of St. Joseph, 348 Mo. 954 (156 SW2d 691).

11.  The 1931 Torras map shows on its face that it was not a resurvey of the area in dispute nor of the lot areas opposite the same. We cannot say that such map established the high water mark of the Atlantic Ocean as being the same as the east side of Dixon Drive between First and Ninth Streets, nor that the appellees and their predecessors are estopped to deny that fact. Additionally, other property rights have attached. Because of our holding in paragraph one above, what we say here becomes academic.

12.  Having held that the lot purchasers were granted easements in the open area shown on the 1914 J. B. High Subdivision plat, and there being a factual possibility the same may have been dedicated to public use, the predecessors of the applicants could not by resurvey of the area, i. e. the 1924 Gramling-McCormick plat, designate extensions of streets into or through the

open area which was not done on the 1914 J. B. High plat.

13. Although the Land Registration Law (Code Ann. § 60-217) requires the services of a registered surveyor, we conclude this is directory and the court does not commit error when it approves the services of a registered *engineer,* provided the court determines he is equally well qualified to perform the services required of a surveyor.

14. Where notice of appeal is filed, the term "costs" which must be paid by the appellant before the clerk transmits the record on appeal are all of the accrued costs in the case to that date, which have not been theretofore paid, including the statutory costs for preparing the record for the appeal, as well as the cost for finally recording the papers on the permanent minutes of the court even though such final recording has not been completed at the time the notice of appeal is filed. Especially would this be applicable in a county where the clerk is on a salary basis and all applicable fees would accrue to the county treasurer rather than to the clerk as an individual. See *Jacobs v. Shiver,* 226 Ga. 284 (174 SE2d 415) (1970); *George v. American Credit Control, Inc.,* 222 Ga. 512 (150 SE2d 683) (1966); *Pickett v. Paine,* 139 Ga. App. 508 (1) (229 SE2d 90) (1976) and cits.

15. While the Clerk of the Superior Court of Glynn County is now on a salary basis, costs accruing from civil cases are nevertheless property of the county, and the clerk is required by law to collect and account for the same. See Ga. L. 1972, p. 3199 et seq. The fiscal authorities of Glynn County not being a party to this case, and being interested in the proper application of court costs, and the appellant in this case not being adversely affected by the application of such costs, we conclude that the issue is not properly before the court, and we would not propose to volunteer an advisory opinion in that regard.

*Judgment of the lower court reversed and case remanded for further proceedings not inconsistent with this opinion. All the Justices concur.*

ARGUED JANUARY 17, 1978 — DECIDED APRIL 4, 1978.

*Moreton Rolleston, Jr.,* for appellant (case no.

33175).

*Reid W. Harris,* for appellants (Case Nos. 33181 and 33183).

*Arthur K. Bolton, Attorney General, Don A. Langham, First Assistant Attorney General, Patricia T. Barmeyer, Assistant Attorney General, Terry L. Readdick,* for appellants (case no. 33182).

*Nightingale, Liles & Dennard, B. N. Nightingale, Lissner & Killian, J. J. Lissner, Jr., Reid W. Harris, Lucian J. Endicott, Taylor, Bishop & Lee, James A. Bishop, Arthur K. Bolton, Attorney General, Patricia T. Barmeyer, Assistant Attorney General, Moreton Rolleston, Jr., Thomas J. Dickey,* for appellees.

*Lucian D. Endicott,* amicus curiae.

Marvin J. Highsmith, *pro se.*