**PETER BAY OWNERS ASSOCIATION, INC., Plaintiff,**

**v.**

**ANDREW R. STILLMAN, JOY H. STILLMAN, JOHN G. CATTS, and SHEILA J. ROEBUCK, Defendants**

**ANTONIO GODINEZ, BONNIE GODINEZ, PAUL DUE, GENEVIEVE DUE, and ETHLYN HALL, Intervening Counterclaim Plaintiffs**

**v.**

**JAMES HENRY, CAROL HENRY, L.D. KIRK, SUZANNE KIRK, SCOTT F. MEESE, DONNA G. MEESE, ARIE LIEBESKIND, DOREEN LEIBESKIND, JIM R. HAYES, ZAQUIN S. HAYES, JEFFREY PRICE, STEVEN PAUL, JANN PAUL, ST. JOHN LAND INVESTMENT L.P., and ANDREWS ST. JOHN TRUST, Intervening Counterclaim Defendants**

Civil Action No. 97-0036

District Court of the Virgin Islands

Division of St. Thomas and St. John

June 9, 1999

JAMES M. DERR, ESQ., *Attorney for Plaintiff Peter Bay Owners Association, Inc.*, St. Thomas, VI.

J. DARYL DODSON, ESQ., LAW OFFICES OF MOORE & DODSON, St. Thomas, VI, *Attorney for defendants Andrew R. Stillman, Joy H. Stillman, John G. Catts, Sheila J. Roebuck.*

JOHN H. BENHAM, ESQ., WATTS & BENHAM, P.C., St. Thomas, VI., *Attorney for defendants Andrew R. Stillman, Joy H. Stillman.*

HENRY C. SMOCK, ESQ., LAW OFFICES OF HENRY C. SMOCK, St. Thomas, VI, *Attorney for Intervening Counterclaim Plaintiffs Antonio Godinez, Bonnie Godinez, Paul Due, Genevieve Due.*

SAMUAL H. HALL, ESQ., BIRCH, DEJONGH, HINDELS & HALL, St. Thomas, VI, *Attorney for Intervening Counterclaim Plaintiff Ethlyn Hall.*

GREGORY H. HODGES, ESQ., CHAD C. MESSIER, ESQ., St. Thomas, VI *Attorneys for Intervening Counterclaim Defendants James Henry, Carol Henry, L.D. Kirk, Suzanne Kirk, Scott F. Meese, Donna B. Meese, Arie Liebeskind, Doreen Liebeskind, Jim R. Hayes, Zaquynn S. Hayes, Jeffory Price, Steven Paul, Jann Paul, St. John Land Investment L.P., The Andrews St. John Trust.*

BROTMAN, *Judge.* (Sitting by Designation)

Presently before the Court is the intervening counterclaim defendants'[1] motion in limine seeking the following actions: (1) that the Court take judicial notice of the fact that Map 1037-3, later

---

[1] On March 31, 1999, intervening counterclaim defendants (then intervening plaintiffs) filed a motion to realign the parties in this case so that the intervening plaintiffs would become the counterclaim defendants and the intervening defendants would become the counterclaim plaintiffs. On June 9, 1999, the Court issued an order amending the

recorded as PWD D9-1330-T77, was filed with the Court on March 17, 1977; (2) admission of the Finucan Certificate, the April 4, 1977 Order of this Court, and the Pallme Letter; (3) that the Court place on intervening counterclaim plaintiffs the burden of proving that their beach easement claim was raised within the limitations period; and (4) a finding that the Finucan Certificate is prima facie evidence of service which raises a presumption of valid service that can only be overcome by clear and convincing evidence. Argument on this motion was heard on April 15, 1999 and followed by a bench trial.

## I. FACTS AND PROCEDURAL BACKGROUND

This case involves a Partitioning Decree issued by this Court (the late Warren Young, presiding) in the case of *Harthman v. Harthman*, 1975 U.S. Dist. LEXIS 16494, 12 V.I. 142 (D.V.I. 1975). In 1974, the *Harthman* Court appointed three commissioners to recommend how to partition an area know as Peter Farm. The Court adopted the commissioners' recommendations but with five exceptions. One of these exceptions was to the commissioners' recommendation that a beach easement be created to extend a flat fifty feet inland. The *Harthman* Court ordered the Virgin Islands Engineering and Survey, Inc. to complete and record a revised survey reflecting the Partitioning Decree. Sometime after March 17, 1977, map 1037-3 was recorded as P.W.D. D9-1330-T77 ("Map D9-1330-T77") in the Cadastral Section of the Public Works Department. Map D9-1330-T77 reflected a flat fifty-foot easement and contained a statement that it was created pursuant to the Partitioning Decree. Count four of the counterclaim which defendants filed in the case presently before the Court challenges whether the easement ultimately created by the Harthman Court extended a flat fifty feet inland or extended to the berm line.[2]

caption so that the intervening plaintiffs became the intervening counterclaim defendants and the intervening defendants became the intervening counterclaim plaintiffs.

[2] On March 11, 1997, Peter Bay Owners Association, Inc. ("Peter Bay") filed a complaint against the Stillmans, John G. Catts, and Sheila J. Roebuck (collectively "defendants") alleging that the defendants had failed to pay landowners' association fees which Peter Bay had assessed for the costs of maintaining the Peter Farm roadways. Peter Bay claimed that it had satisfied the means established in the Partitioning Decree for forming a landowners' association and was therefore entitled to assess the Peter Farm

On December 18, 1997, intervening counterclaim plaintiffs Antonio and Bonnie Godinez and Paul and Genevieve Due moved for summary judgment on the beach easement issue raised in count four of the Stillmans' counterclaim. On February 5, 1998, Peter Bay filed a cross-motion for summary judgment. On May 4, 1998, intervening counterclaim plaintiff Ethlyn Hall filed a motion for summary judgment. On June 9, 1998, intervening counterclaim defendants filed a cross-motion for summary judgment. On October 26, 1998, the Court denied intervening counterclaim defendants' cross-motion for summary judgment on the grounds that there existed a genuine issue of material fact regarding whether the twenty-year limitations period for count four of the defendant's counterclaim had run. The Court found that neither the parties to the present litigation nor their predecessors in interest had constructive notice of Map D9-1330-T77's flat fifty-foot easement but that these parties may have had actual notice of the fifty-foot easement more than twenty years prior to the date on which the defendants filed their counterclaim in the instant action, which was April 22, 1997. The Court reserved judgment on the other summary judgment motions until it could determine whether actual notice of the fifty-foot easement had caused the statute of limitations to run on count four of the defendants' counterclaim. On April 15, 1999, the Court presided over a bench trial on this limited issue. After hearing argument on intervening counterclaim defendants' motion in limine, the Court made a ruling from the bench regarding the issues raised therein. At the same time, the Court indicated its intent to issue a written opinion regarding the motion. See April 15, 1999 Trial Tr. at 42-43.

## II. DISCUSSION

### A. TAKING JUDICIAL NOTICE OF THE FACT THAT MAP D9-1330-T77 WAS FILED WITH THE COURT ON MARCH 17, 1977

In their briefs and at oral argument, intervening counterclaim

---

landowners for roadway maintenance costs. On April 22, 1997, the Stillmans filed an answer and counterclaim. In count four of the counterclaim, the Stillmans asked the Court to clarify the extent of the beach easement created by the Harthman Partitioning Decree.

defendants argue that Map D9-1330-T77 was filed with the Court on March 17, 1977 and that the Court should take judicial notice of this fact. Defendants and intervening counterclaim plaintiffs do not offer any objection to judicial notice being taken. *See* April 15, 1999 Trial Tr. at 6. Pursuant to FED. R. EVID. 201(b), a court may take judicial notice of a fact that is "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." A court is required to take judicial notice "if requested by a party and supplied with the necessary information." FED. R. EVID. 201(d).

The docket in the *Harthman* action indicates that on March 17, 1977, the following documents were filed by Thomas W. Finucan, Esq. ("Finucan"), attorney for plaintiff Sammy (Lemme) Harthman, Sr.:

> Certificate of Service, Affidavit of Sammy E. Harthman; Affidavit of Joseph Brennan; Memorandum; Motion; Notice of Motion, filed, by Thomas W. Finucan, Esq. Atty. for Plaintiff.

Although the docket does not indicate that a map was filed along with the motion papers, a map was found in the Court's *Harthman* file immediately following the other documents listed in the docket entry cited above. Because of the map's location in the *Harthman* file and because there is no objection to the Court's taking judicial notice of the filing of Map D9-1330-T77, the Court will take judicial notice of the fact that Map D9-1330-T77 was filed with the Court on March 17, 1977. See April 15, 1999 Trial Tr. at 6.

**B. ADMISSION OF THE FINUCAN CERTIFICATE AND OTHER DOCUMENTS FROM THE COURT'S HARTHMAN FILE, THE APRIL 4, 1977 ORDER OF THE COURT, AND THE PALLME LETTER AS EVIDENCE**

Intervening counterclaim defendants seek to admit into evidence at trial the following documents: (1) the certificate of service filed by Thomas Finucan, Esq. ("Finucan"), attorney to the plaintiff in the *Harthman* action, on March 17, 1977 indicating that Map

D9-1330-T77 was filed along with the motion for a lien, as well as other documents filed along with this motion; (2) the April 17, 1977 order of this Court granting the requested lien; and (3) a letter from William A. Pallme, Esq. ("Pallme") to Amiot Harthman, the party to the *Harthman* action against whom the lien was sought, indicating that he had been served on March 17, 1977 with "the full set of papers on a motion by the attorneys for Sammy Harthman, Sr., dated March 17, 1977 to impose a lien against the lands allotted to [him]." Intervening Countercl. Defs.' Mem. of Law in Support of Mot. in Limine, Ex. B. Intervening counterclaim defendants argue that these documents are admissible because they are certified copies of documents found within the Court's *Harthman* file and are therefore self-authenticating. *See* FED. R. EVID. 902 (4) (Self-authenticating documents include "[a] copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and in a public office including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority."). Defendants and intervening counterclaim plaintiffs do not dispute the authenticity of these documents, arguing instead that all three documents or sets of documents are inadmissible because they are irrelevant and that the Finucan Certificate and the Pallme letter constitute inadmissible hearsay.

## 1. Relevance

Defendants and intervening counterclaim plaintiffs argue that—with the exception of Finucan's certificate of service—all of the documents filed with the Court along with the motion for a lien are irrelevant and should not be admitted into evidence. See Fed. R. Evid. 402 ("All relevant evidence is admissible, except as otherwise provided . . . . Evidence which is not relevant is not admissible."); FED. R. EVID. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). The Court does not find these documents to be irrelevant. If intervening counterclaim

defendants are able to prove that Map D9-1330-T77 was filed along with the motion for a lien and the other documents, then evidence that the parties to the *Harthman* action received these documents on March 17, 1977 will support a finding of actual notice of the map. The documents filed along with the motion for a lien are therefore relevant and admissible.

The Court also finds that the Pallme letter and the Court's April 4, 1977 order are relevant.[3] The Pallme letter indicates that service of a "full set of papers" regarding the motion for a lien was received by Pallme on March 17, 1977. If intervening counterclaim defendants are able to prove that this "full set of papers" included the map at issue, then this letter serves as evidence that service was effected as indicated in Finucan's certificate of service. The April 4, 1977 order is relevant because it states that the plaintiff in the *Harthman* action filed "a Memorandum, affidavits, maps and a statement of survey costs" along with his motion for a lien on those parcels of land allocated to Amiot Harthman by Partitioning Decree dated August 21, 1975. *See* Intervening Countercl. Defs.' Mem. of Law in Support of Mot. in Limine, Ex. C.

### 2. Hearsay

Intervening counterclaim defendants argue that the Finucan certificate of service falls under the business records exception to the hearsay rule (FED. R. EVID. 803(6)) as well as the residual hearsay exception (Fed. R. Evid. 807). Defendants and intervening counterclaim plaintiffs argue that these exceptions to the hearsay rule do not apply. In an earlier opinion, the Court determined that the Finucan certificate of service is not conclusive proof of service. *See Peter Bay Owners Assoc., Inc. v. Stillman, et al.,* Civil Action No. 97-0036, Opinion on Motions for Summary Judgment and Motion to Consolidate, at 16. Pursuant to this decision, the certificate cannot be admitted for its truth. It is therefore unnecessary for the Court to address the hearsay exceptions raised by intervening counterclaim defendants. This earlier determination did not, however, impact the admissibility of the Finucan certificate as evidence

---

[3] Defendants and intervening counterclaim plaintiffs indicated that they had no objection to the admission of the Court's April 4, 1977 order. See April 15, 1999 Trial Tr. at 7.

of the state of mind of the declarant—*i.e.*, as evidence that Finucan intended the motion papers, including the map, to be hand-delivered on March 17, 1977 to the individuals listed in the certificate of service. The Court will therefore admit the certificate for this limited purpose.

Intervening counterclaim defendants argue that the Pallme letter falls within the residual exception to the hearsay rule. *See* FED. R. EVID. 807 ("A statement not specifically covered by Rule 804 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on one point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence."). Defendants and intervening counterclaim plaintiffs argue that the Pallme letter does not fall under the residual exception to the hearsay rule because it does not provide any evidence of a material fact. The Court disagrees. If offered for its truth, the Pallme letter may be used to show that Pallme received a "full set of papers" regarding Sammy Harthman, Sr.'s motion for a lien on March 17, 1977 and forwarded these papers to Amiot Harthman on March 18, 1977. If intervening counterclaim defendants can prove that this "full set of papers" included Map D9-1330-T77, then the Pallme letter may be used to show that Finucan effected service consistent with the certificate of service.[4] Defendants and intervening counterclaim plaintiffs also argue that the Pallme letter does not fall under the residual exception to the hearsay rule because there is other evidence which can be procured to prove that the documents referenced in the Finucan certificate were served in accordance with the certificate. Specifically, defendants and intervening counterclaim plaintiffs state that James Hymes ("Hymes"), another one of the attorneys listed in the Finucan certificate of service, is available to testify regarding the contents of his *Harthman* files. Hymes' testimony would have

---

[4] Of course, intervening counterclaim defendants would still have had to prove the date on which Amiot Harthman received this 'full set of papers' since Pallme was no longer Amiot Harthman's attorney at the time Pallme received these papers.

proven whether he received Map D9-1330-T77 along with the motion for a lien and other accompanying documents on March 17, 1977. However, testimony—or other evidence—from all three attorneys listed on the certificate of service would be necessary to determine whether the parties to the Harthman action received actual notice of Map D9-1330-T77. The Court finds that the Pallme letter falls under the residual exception to the hearsay rule and will therefore admit the document for its truth.

## C. THE BURDEN OF PROOF

Intervening counterclaim defendants argue that defendants and intervening counterclaim plaintiffs must bear the burden of proving that their counterclaim, which raised the beach easement issue, was filed within the twenty-year limitations period. Defendants and intervening counterclaim plaintiffs argue that the statute of limitations is an affirmative defense and that the burden of proving this defense lies with the party that raised it—here, intervening counterclaim defendants. The Court finds the approach adopted by defendants and intervening counterclaim plaintiffs to be the correct one. There are no Virgin Islands statutes that address this issue, nor are there any restatement provisions which do so. Therefore, the "rules of the common law, . . ., as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands." 1 V.I.C. § 4. Where the statute of limitations is raised as an affirmative defense, as it was in the present case,[5] the burden of proof with regard to limitations periods is generally understood as follows:

> As the pleadings were framed in his case, the Statute of Limitations is an affirmative defense. The burden of

---

[5] On May 7, 1997, the Court granted intervening counterclaim defendants' request to intervene to oppose the Stillmans' counterclaim and the summary judgment motion that had been filed by defendants Antonio and Bonnie Godinez and Paul and Genevieve Due. Without first filing an answer to the Stillmans' counterclaim, intervening counterclaim defendants filed a cross-motion for summary judgment on June 9, 1997 in which they raised the statute of limitations as a defense to the Stillmans' beach easement claim. On March 31, 1999, intervening counterclaim defendants filed an answer without leave of court which listed the statute of limitations as an affirmative defense to the Stillmans' counterclaim. On June 9, 1999, the Court issued an order deeming the answer to have been filed with leave of Court.

proving it rests upon the defendant. As part of that burden rests the obligation to prove the date upon which the Statute started running.

*Hertrich v. Robbins*, 38 F. Supp. 104, 104-05 (E.D. Wash. 1941). Language found in one Virgin Islands case appears to support this approach. *See Lawaetz v. The Bank of Nova Scotia*, 653 F. Supp. 1278, 23 V.I. 132, 140 (D.V.I. 1987) ("[W]e view the fraud count [raised by the plaintiffs] as timely until the Bank [as the defendant] proves it is not.").

### D. PRESUMPTION OF VALID SERVICE CREATED BY FINUCAN CERTIFICATE

Intervening counterclaim defendants ask the Court to find that the Finucan certificate of service creates a presumption of valid service that is rebuttable only by clear and convincing evidence. In many jurisdictions, a certificate of service creates such a presumption where the certificate is based on personal knowledge of service. *See, e.g., Trustees of Local Union No. 727 Pension Fund v. Perfect Parking, Inc.*, 126 F.R.D. 48, 52 (N.D. Ill. 1989), cited in 3 Moore's Fed. Practice § 4.100. Because it is not clear that the Finucan certificate is based on personal knowledge of service, it could not create a rebuttable presumption of valid service.

### III. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part intervening counterclaim defendants' motion in limine. An appropriate order will be entered. The Court will now proceed to make findings of fact and conclusions of law with regard to the issues raised in the April 15, 1999 bench trial.

DATED June 9, 1999.

### ORDER

THIS MATTER having come before the Court on the motion in limine filed by intervening counterclaim defendants; and

The Court having reviewed the submissions of the parties; and

The Court having heard oral argument on April 15, 1999 on the motion;

IT IS on this 9th day of June, 1999 hereby

ORDERED that intervening counterclaim defendants' request that the Court take judicial notice of the filing of Map 1037-3, later recorded as PWD D9-1330-T77, on March 17, 1977 is GRANTED; and

IT IS FURTHER ORDERED that intervening counterclaim defendants' request that the Court admit the April 4, 1977 order of this Court and the Pallme letter for their truth is GRANTED; and

IT IS FURTHER ORDERED that intervening counterclaim defendants' request that the Court admit the Finucan certificate for its truth is DENIED and the the Finucan certificate will be admitted only as evidence of Finucan's state of mind at the time the certificate was drafted; and

IT IS FURTHER ORDERED that intervening counterclaim defendants will bear the burden of proving that the limitations period has run on the beach easement issue raised in the Stillmans' counterclaim, including the burden of proving when the parties to the *Harthman* action had actual notice of PWD D9-1330-T77; and

IT IS FURTHER ORDERED that the Finucan certificate of service does not raise a presumption of valid service.