PETER BAY OWNERS
ASSOCIATION, INC.
Plaintiff,

v.

Andrew R. STILLMAN, Joy H. Stillman, John G. Catts, and Sheila J. Roebuck, Defendants.

Antonio Godinez, Bonnie Godinez, Paul Dué, Genevieve Dué, and Ethlyn Hall, Intervening Counterclaim Plaintiffs,

v.

James Henry, Carol Henry, L.D. Kirk, Suzanne Kirk, Scott F. Meese, Donna G. Meese, Arie Liebeskind, Doreen Liebeskind Jim R. Hayes, Zaquin S. Hayes, Jeffrey Price, Steven Paul, Jann Paul, St. John Land Investment L.P., and Andrews St. John Trust, Intervening Counterclaim Defendants.

No. CIV. A. 97–0036.

District Court,
Virgin Islands,
St. Thomas Division.

Aug. 22, 2001.

James M. Derr, Esq., St. Thomas, for Plaintiff Peter Bay Owners Association, Inc.

J. Daryl Dodson, Esq., Law Offices of Moore & Dodson, St. Thomas, for Defendants Andrew R. Stillman, Joy H. Stillman, John G. Catts, and Sheila J. Roebuck.

John H. Benham, Esq., Watts & Benham, P.C., St. Thomas, for Defendants Andrew R. Stillman and Joy H. Stillman.

Henry C. Smock, Esq., St. Thomas, for Intervening Counterclaim Plaintiffs Antonio Godinez, Bonnie Godinez, Paul Dué, and Genevieve Dué, and substituted party Michael Burgamy.

Samuel H. Hall, Esq., Birch, DeJongh, Hindels & Hall, St. Thomas, for Intervening Counterclaim Plaintiff Ethlyn Hall.

Gregory H. Hodges, Esq., Chad C. Messier, Esq., 1A Frederiksberg Gade, St. Thomas, for Intervening Counterclaim Defendants James Henry, Carol Henry, L.D. Kirk, Suzanne Kirk, Scott F. Meese, Donna B. Meese, Arie Liebeskind, Doreen Liebeskind, Jim R. Hayes, Zaquynn S. Hayes, Jeffrey Price, Steven Paul, Jann Paul, St. John Land Investment L.P., and The Andrews St. John Trust.

W.T. Jerome, Esq., St. John, for Intervenors Ned Lemkemeier, Sally Lemkemeier, and David Mugar.

## OPINION ON MOTIONS FOR RECONSIDERATION BY DEFENDANTS STILLMANS AND INTERVENING PLAINTIFFS GODINEZES AND DUÉS

BROTMAN, District Judge (Sitting by Designation).

On July 12, 2000, this Court granted the motion of the Stillmans, Godinezes, and Dués for reconsideration of the Court's July 15, 1999, Opinion and Order, which established the boundaries of the beach easements burdening the movants' properties at Peter Bay, St. John. Having heard oral argument and considered three rounds of briefs over the past year, the Court today enters its revised decision. For the reasons stated below, the Court vacates its earlier opinion and order and declares that the beach easement burdening movants' parcels extends inland only to the vegetation berm line.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The facts of this protracted land dispute are fully described in several published

opinions, *see Peter Bay Owners Ass'n v. Stillman,* 58 F.Supp.2d 640 (D.Vi.1999); *Peter Bay Owners Ass'n v. Stillman,* 57 F.Supp.2d 192 (D.Vi.1999); *Peter Bay Owners Ass'n v. Stillman,* 1999 WL 93538 (D.Vi. Feb.16, 1999); *Peter Bay Owners Ass'n v. Stillman,* 1998 WL 779038 (D.Vi. Oct.26, 1998), and are set forth only as relevant here.

On March 11, 1997, Plaintiff Peter Bay Owners Association ("Peter Bay") filed a Complaint against Andrew and Joy Stillman, John G. Catts, and Sheila J. Roebuck ("Defendants") seeking owners' association fees and a declaratory judgment concerning the applicability of certain covenants to Defendants' property. On April 24, 1997, the Stillmans filed an Answer and Counterclaim, requesting recoupment of payments to Peter Bay and various forms of declaratory relief. It is the Court's understanding that all claims in the Complaint and Counterclaim, apart from count four of the Counterclaim,[1] have been adjudicated or otherwise resolved.[2]

Counterclaim count four, the matter at issue here, sought clarification of the extent of the beach easement created by the August 21, 1975, Partitioning Decree, which the late Judge Young issued in the case of *Harthman v. Harthman,* 12 V.I. 142 (D.V.I.1975). Between December 1997 and June 1998, the intervening counterclaim plaintiffs—the Godinezes, the Dués, and Ethlyn Hall—filed motions for summary judgment on the extent of the beach easement. Peter Bay and the long list of intervening counterclaim defendants filed cross-motions for summary judgment, which were ultimately resolved against the movants.[3]

In an opinion dated July 15, 1999, the Court determined that the easement created by the *Harthman* decree extended from the 1975 low-water mark to the vegetation berm line. *Peter Bay,* 58 F.Supp.2d at 645. The Stillmans, Godinezes, and Dués, however—as well as the Andrews St. John Trust, which did not join in the motion for reconsideration—were not parties to the Partitioning Decree.[4] They

1. The Counterclaim contains two causes of action styled "Count IV," of which a request to determine the extent of a beach easement is the second. Previous opinions have referred to the easement issue as count four, and for consistency's sake, the Court continues that practice here.

2. Most of the claims, including all causes of action in the Complaint and all but count two and (the second) count four of the Counterclaim, were settled by the parties before Magistrate Judge Barnard on September 12, 1997. Several subsequent motions related to enforcement of that settlement agreement, which were filed between 1997 and 1999, were reported settled by the parties in a hearing before the undersigned on June 13, 2001. In an opinion dated February 16, 1999, the Court resolved count two of the Counterclaim, finding that Peter Bay was not the owners association contemplated by the *Harthman* decree. *Peter Bay,* 1999 WL 93538, at *4–5 (D.Vi. Feb. 16, 1999). Thus,

count four, the subject of this Opinion, is the last of the original claims to be resolved. The Court notes, however, that the Godinezes have recently filed a Motion for Injunctive Relief to Prevent Trespass. The Court reserves judgment on whether this motion is barred by the previous settlements.

3. The cross-motions argued that the limitations period had run on Counterclaim count four. On October 26, 1998, the Court denied the motions because there was a genuine issue of fact as to whether the limitations period had run. *Peter Bay,* 1998 WL 779038. After a bench trial, the Court on July 15, 1999, determined that count four was not time-barred. *Peter Bay Owners Ass'n v. Stillman,* No. 97–0036 (D.V.I. July 15, 1999) (findings of fact and conclusions of law).

4. Among the beachfront landowners in this action, only Ethlyn Hall received her parcel pursuant to the Partitioning Decree. *See Harthman,* 12 V.I. at 156–58.

took title to their parcels by deeds from Harthman heirs, or as successors in interest to parcels deeded by Harthman heirs. Those deeds incorporate survey maps that depict an easement extending inland a flat fifty feet from the 1975 low-water mark. *Id.* at 645–46. The Court concluded that the four parcels were subject to the fifty-foot easement, relying on a Vermont Supreme Court case and general principles in American Jurisprudence (Second Edition) for the proposition that a grantee takes title in accordance with boundaries defined by a survey or map, albeit erroneous, where the deed incorporates the survey or map. *See id.* at 645 & n. 3 (citing *Hull v. Fuller*, 7 Vt. 100, 1835 WL 996 (1835) (finding that when an error is made by a government-appointed surveyor and the affected property is subsequently conveyed by a deed incorporating the erroneous survey, the survey controls); 12 Am.Jur.2d Boundaries § 5 (1997) (stating that a deed which describes property by reference to a map or survey is considered as having adopted the map or survey, so that the grantee takes title in accordance with the boundaries identified in the map or survey); 66 Am.Jur.2d Records and Recording Laws § 135 (1973) ("[I]f in recording a deed, the boundaries are incorrectly described so that it would appear to convey only a part of the land conveyed in the original deed, the record would be good ... only of a conveyance of so much as appeared on the record to be conveyed.")).

The Stillmans, Godinezes, and Dués ("the movants") filed motions for reconsideration, arguing that the Court overlooked controlling law—viz., the Restatement of the Law of Property. *See* L. Civ. R. 7.4 ("A motion to reconsider shall be based on:

(1) intervening change in controlling law; (2) availability of new evidence, or; (3) the need to correct clear error or prevent manifest injustice."). In the absence of local law to the contrary, "[t]he rules of the common law, as expressed in the restatements of the law approved by the American Law Institute" are the law of the Virgin Islands. 1 V.I.C. § 4. Where the common law rules cannot be found in the Restatements, common law "as generally understood and applied in the United States" governs. *Id.* Movants contend that the law—as reflected in the Restatement—mandates that the Court declare all the beachfront parcels to be subject to an easement running inland to the berm line, rather than the flat fifty feet. Peter Bay has argued that the Court should uphold its summary judgment decision.

On July 17, 2000, the Court granted the motions for reconsideration and ordered all parties to submit supplemental briefs on the application of the Restatement, and to the extent that the Restatement did not control, other sources of common law. The Court subsequently held oral argument on August 4, 2000, in which it directed the parties to submit proposed findings of fact and conclusions of law. Following a status hearing on June 13, 2001, the Court allowed the parties to submit additional supplemental briefs on any issues not previously raised.[5]

Finally, by separate order issued today, the Court has granted the motion of Michael Burgamy to substitute for Paul and Genevieve Dué as an intervening counterclaim plaintiff. Although the Dués are among the movants, they sold their Peter Farm parcel to Mr. Burgamy some time

---

5. In addition to the briefs and proposed findings submitted by Peter Bay and the movants, the Court has received a brief from the large group of intervening counterclaim defendants, asking the Court to retain the fifty-foot easement, and a brief from Intervenors David Mugar and Ned and Sally Lemkemeier, urging the Court to adopt the berm-line easement for all beachfront parcels.

after the motions for reconsideration had been granted.

## II. *LEGAL STANDARD*

Because the July 15, 1999 Opinion decided a motion for summary judgment, the Court must apply the summary judgment standard in reconsidering that opinion. Federal Rule of Civil Procedure 56 provides that summary judgment may be granted only when materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law ." *Serbin v. Bora Corp.,* 96 F.3d 66, 69 n. 2 (3d Cir.1996). In deciding whether there is a disputed issue of material fact, a court must grant all reasonable inferences from the evidence to the non-moving party. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that a summary judgment motion must be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Lawrence v. Nat'l Westminster Bank New Jersey,* 98 F.3d 61, 65 (3d Cir.1996) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510). Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-moving party must "make a showing sufficient to establish the existence of [every] element

essential to that party's case, and on which that party will bear the burden of proof at trial." *Serbin,* 96 F.3d at 69 n. 2 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)); *see also Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 500 (3d Cir.), *cert. denied,* 502 U.S. 940, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991) (declaring that non-movant may not "rest upon mere allegations, general denials, or vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," a court may grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511.

## III. *DISCUSSION*

### A. The Restatement

As noted above, the Court must first look to the Restatement to determine whether it overlooked controlling law regarding the boundary of the beach easement. 1 V.I.C. § 4. Peter Bay argues that section 4.8 of the Restatement (Third) of Property (Servitudes), which concerns changes to the dimensions of servitudes, governs this case. Movants proffer two Restatement provisions: section 2.13, which involves servitudes implied from maps, and section 4.1, which provides general rules for interpretation of servitudes. The Court will consider each in turn.

#### 1. *Section 4.8*

Section 4.8 provides, in relevant part:

Except where application of the rules stated in § 4.1 leads to a different result, the location and dimensions of a servitude are determined as follows:

. . . .

(3) The holder of the servient estate is entitled to make reasonable changes in the location or dimensions of an easement when necessary to permit normal

use or development of the servient estate if the changes

(a) do not significantly lessen the utility of the servitude, or

(b) increase the burdens on the holder of the servitude benefit, or

(c) frustrate the purpose for which the servitude was created, and

(d) the holder of the servient estate bears the expenses of making the changes.

Restatement (Third) of Property: Servitudes § 4.8 (Tentative Draft No. 4, 1994).[6] Thus, so long as certain criteria are met, this section allows the owner of the servient estate to unilaterally change the location or dimensions of the easement at his or her own expense. *See Lewis v. Young*, 92 N.Y.2d 443, 452, 682 N.Y.S.2d 657, 705 N.E.2d 649, 653–54 (1998).

Peter Bay argues that the grantors of the beachfront parcels had the power under section 4.8(3) to expand the physical dimensions of the *Harthman* easement, which they did by incorporating into the deeds maps showing a fifty-foot easement. The owners association points out that creation of a larger, fifty-foot easement would not have violated any of the restrictions set forth in subsection (3). The greater width would, if anything, have enhanced the utility of the easement, and the en-larged easement would have neither burdened the Peter Farm property owners nor frustrated the easement's purpose— use of the beach. Peter Bay therefore contends that there is no inconsistency between the Partitioning Decree and the deeds conveyed by the Harthman heirs; the grantors simply exercised their power to increase the size of the easement.

As discussed in Part III.C of this Opinion, the Court agrees that the grantors could have expanded the beach easements burdening their parcels. The principles of section 4.8(3), however, would not have been the source of that power. The purpose of section 4.8(3) "is to increase the value of the servient estate by limiting the easement's potential to prevent development even when a relocated easement would equally well serve the interests of the easement holder." Restatement (Third) of Property: Servitudes § 4.8 cmt. f (Tentative Draft No. 4, 1994). This case does not involve efforts to maximize the value of the servient estate by reducing the burden of the easement. Here, en-larging the easement to a flat fifty feet increases the burden on the servient estates, arguably decreasing their value and potential for development. Moreover, this section by its terms defers to the rules of easement interpretation prescribed in sec-

---

**6.** The final Restatement (Third) of Property was not issued until 1998, after the original summary judgment motion on the beach easement issue had been filed. The draft version of section 4.8 is thus the only one that could possibly apply in this action. *See Varlack v. S.W.C. Caribbean, Inc.*, 550 F.2d 171, 180 (3d Cir.1977) (holding that a tentative draft may be deemed the law of the Virgin Islands if it reflects the weight of common law authority).

In its order granting the motions for reconsideration, the Court asked the parties to brief which version of the Restatement should control. The answer to this question, the Court noted, hinged on whether the applicable law was that existing at the time of "(a) the dates on which the movants obtained title to their properties . . . , (b) the date of the filing of this action (March 11, 1997), or (c) the filing date of the original motion for summary judgment on the beach easement issue (December, 18, 1997)." (Order of July 12, 2001, at 3 & n. 2.) Tentative Draft No. 4, which contained section 4.8, was issued April 5, 1994. Thus, the draft would have been in effect for possibilities (b) and (c). Since Joy Stillman acquired her parcel in 1992, however, the draft would be inapplicable if the relevant time were determined by the date the movants obtained title. The Court need not consider this possibility, since, as discussed below, section 4.8 has no bearing on the facts of this case.

tion 4.1, discussed below. Since section 4.8(3) does not contemplate the circumstances at hand, and because it is in any event trumped by section 4.1, the Court will not look to section 4.8(3) as a means of reconciling the easement language of the Partition Decree and deeds with the easement descriptions in the maps.

### 2. *Section 2.13*

Section 2.13 provides:

> In a conveyance or contract to convey an estate in land, description of the land conveyed by reference to a map or boundary may imply the creation of a servitude, and if a different intent is not expressed or implied by the circumstances:
>
> (1) A description of the land conveyed that refers to a plat or map showing streets, ways, parks, open space, beaches, or other areas for common use or benefit, implies creation of a servitude restricting use of the land shown on the map to the indicated uses.
>
> (2) A description of the land conveyed that uses a street, or other way, as a boundary implies that the conveyance includes an easement to use the street or other way.

Restatement (Third) of Property: Servitudes § 2.13.[7] On the basis of this provision, movants argue that the intent of the grantees and the Harthman grantors should control, since a map implies creation of a particular easement only where "a different intent is not expressed." *Id.*

On its face, section 2.13 seems applicable to this case. The movants each entered into "a contract to convey an estate in

land," and in each case the "description of the land conveyed . . . refer[red] to a map" depicting a fifty-foot easement. *Id.* § 2.13. A closer look at section 2.13 and the cases upon which it is based, however, demonstrates that the rule is not on point. Under section 2.13, an easement to use common areas such as parks and beaches will be implied where the description of the land conveyed refers to a map showing these common areas. The purpose of the rule is to give to the purchaser "those benefits, the promise of which, it is reasonable to infer, has induced [him or her] to buy portions of a tract laid out in the plan indicated." *Bonifay v. Garner*, 445 So.2d 597, 603 (Fla.Dist.Ct.App.1984) (quoting *McCorquodale v. Keyton*, 63 So.2d 906, 910 (Fla.1953)); *see also* Restatement (Third) Property: Servitudes § 2.13 cmt. a. This purpose is well illustrated in *Smith v. Bruce*, 241 Ga. 133, 244 S.E.2d 559 (1978) and the other cases cited in the comment to section 2.13.

In *Smith,* the Supreme Court of Georgia held that purchasers of lots in a subdivision acquired, by implication, easements over a strip of land providing access to the beach. The purchasers' deeds did not expressly grant an easement over the strip; the plat referenced by the deeds, however, showed the strip of land leading to the beach. The court reasoned that "[w]ithout the use of this area by lot purchasers there would be no practical means of access from the developed lots and developed street shown on the plat to the [beach]." *Id.* at 139, 244 S.E.2d at 565. The court further explained that "[u]nless the impetus of the plan was to afford buyers of lots an easement to the beach areas on the plat, the

---

**7.** The same version of section 2.13 would govern regardless of which date the Court chose as its reference point. *See supra* note 7. Section 2.13 was included in Tentative Draft No. 1 of the Restatement (Third) of Property (Servitudes), dated April 5, 1989. It was thus in effect well before 1992, when Joy Stillman became the first of the movants to obtain title. Because the ALI adopted this section in 1998 without substantive changes, the Court will refer to the final version of the Restatement (Third) of Property in discussing section 2.13.

deeds made with reference thereto would be deceptively misleading. 'It would ... be the height of injustice, and contrary to every principle of good faith, to permit [the developers] to derive this advantage, and then frustrate the expectations held out ....'" *Id.* at 142, 244 S.E.2d at 566–67 (quoting *East Atlanta Land Co. v. Mower*, 138 Ga. 380, 390, 75 S.E. 418, 423 (1912)); *see also Clearwater Realty Co. v. Bouchard*, 146 Vt. 359, 363, 505 A.2d 1189, 1191–92 (1985) (holding that purchasers acquired an easement over a right-of-way to the beach where the deeds referred to a plat depicting the right-of-way); *State v. East Shores, Inc.*, 131 N.J.Super. 300, 311, 329 A.2d 585, 591 (Ch.Div.1974) ("The conveyance of lots by reference to a map upon which streets, rights of way, beaches and docks are laid out implicitly creates private rights in those streets, rights of way, beaches and docks shown.").

The circumstances present in this case do not fall within the purpose of section 2.13. The deeds and maps describe an easement burdening, not benefitting, movants' parcels. Section 2.13 protects lot owners where a map implies an easement—such as an easement over subdivision common areas—that benefits their parcels. Section 2.13 does not help the Court in determining whether the beachfront parcels should be subject to the greater burden imposed by the easement shown on the maps.

### 3. *Section 4.1*

In the absence of a Restatement provision governing the specific circumstances of this case, section 4.1 may supply a more general rule of decision. Titled "Interpretation of Servitudes," section 4.1 provides:

(1) A servitude should be interpreted to give effect to and be consistent with:

(a) the intentions of the parties to an expressly created servitude;

(b) the intentions or reasonable expectations of the parties to a servitude created by implication, necessity, or estoppel; and

. . .

(2) A servitude should be interpreted to carry out the purpose for which it was created.

(3) To the extent not inconsistent with the interpretation arrived at under subsections (1) and (2), a servitude should be interpreted to avoid violating public policy. Among reasonable interpretations, that which is more consonant with public policy should be preferred.

Restatement (Third) of Property: Servitudes § 4.1 (Tentative Draft No. 4, 1994).[8] The rule "place[s] the intentions or reasonable expectations of the parties at the forefront of the interpretation process .... [t]o the extent the parties' intentions and expectations can be ascertained, they should be given effect." *Id.* cmt. b. With respect to an expressly created servitude, the parties' intentions are to be ascertained "from the servitude's language interpreted in light of all the circumstances." *Id.* cmt. c.

Touching as it does on the interpretation of ambiguous or conflicting terms in a conveyance, *see id.* cmt. c, d, section 4.1 manifestly applies to the Peter Farm beach easement. This section is problematic, however, because it may not have taken effect early enough—having first appeared in 1994 as part of Tentative Draft No. 4. As noted in Part III.A of this Opinion, section 4.1 would be inapplicable

---

**8.** As noted earlier, *see supra* note 7, the tentative draft is the only version of the Restatement that could possibly apply to this action, since the final Restatement (Third) of Property was not issued until 1998.

if the law to be applied is that which was in effect in 1992, when one of the movants—Joy Stillman—first took title.[9] Consideration of the common law "as generally understood and applied in the United States," 1 V.I.C. § 4, provides the solution. Two scenarios present themselves. Either specific rules from the case law will supplant the general principles of section 4.1, or the case law will buttress those principles. In the event of the latter, the court would be obliged—regardless of the availability of section 4.1—to construe the easement in accordance with the parties' intent.[10]

## B. Other Authorities

In its Opinion of July 15, 1999, the Court relied heavily on the Vermont Supreme Court case of *Hull v. Fuller* in concluding that the movants' parcels were subject to the wider easement. *See Peter Bay,* 58 F.Supp.2d 640, 645 & n. 3 (citing *Hull,* 7 Vt. 100, 1835 WL 996). *Hull* involved, inter alia, a property claim which was at odds with a map, produced by state-appointed commissioners, that had been incorporated into the claimant's deed. *Hull,* 7 Vt. 100, 1835 WL 996, at *7. This Court cited the following language from *Hull*

Whatever then might have been his previous claims, they were limited and defined by that deed, which, being recorded, was notice to all the world, to the plaintiff as well as others, that he claimed only the lot, as the commissioners had made it. He could have no constructive possession of any thing more thereafter, and any previous claim to any greater extent was ipso facto abandoned by the acceptance and recording of that deed.

**9.** *See supra* notes 7, 8.

**10.** The Court does not interpret the Virgin Islands Code to require that any specific rules

*Peter Bay,* 58 F.Supp.2d at 645 (quoting *Hull,* 7 Vt. 100, 1835 WL 996, at *7). The Court also cited two sections of American Jurisprudence (Second Edition) to support its conclusion that the movants' parcels were subject to the easement reflected in the maps. *See Peter Bay,* 58 F.Supp.2d at 645 & n. 3 (citing 12 Am.Jur.2d Boundaries § 5 (1997) (stating that where a deed describes property by reference to a map, the grantee takes title in accordance with the boundaries identified in the map); 66 Am.Jur.2d Records and Recording Laws § 135 (1973) (stating that when a deed is recorded with an incorrect description of the parcel, the record is good and constitutes notice only as to so much of the land as was described)).

These authorities notwithstanding, other cases suggest that, in construing a deed to determine a parcel's boundaries, the paramount consideration is the intent of the parties to the conveyance—as is reflected in section 4.1 of the Restatement (Third) of Property (Servitudes). For example, in *Heritage Communities of North Carolina, Inc. v. Powers, Inc.,* 49 N.C.App. 656, 272 S.E.2d 399 (Ct.App.1980), the court held that, where a deed did not expressly reserve an easement but incorporated a plat map showing such an easement, the intent of the parties should control. *See id.* at 659–60, 272 S.E.2d at 401–02. The court noted that the parties' intent could be ascertained by examination of "the situation of the parties and the situation dealt with at the time of the conveyance." *Id.* at 660, 272 S.E.2d at 401; *see also Roebuck v. Columbia Gas Transmission. Corp.,* 57 Ohio App.2d 217, 224, 386 N.E.2d 1363, 1368 (1977) (stating that evidence could be introduced to show

from the case law give way to general guidelines in the Restatement. *See* 1 V.I.C. § 4.

the situations of the easement, properties, and parties, "in order to determine what was granted by one party and received by the other, the object being to apply the grant ... as the parties intended."). Similarly, in *Duane v. Saltaformaggio*, 455 So.2d 753 (Miss.1984), the court determined a boundary by reference to the official plat rather than to monuments on the land because the former was more consistent with the parties' intent. *Id.* at 757–58. The court explained:

> [A] court should give controlling consideration to the intent of the parties in applying rules for the construction of deeds.... The parties' deed incorporates the official plat to particularly describe the lot conveyed. Therefore, all the descriptive information in the plat should be considered and harmonized as far as possible to achieve the intent of the grantor.

*Id.* at 757. It is true that *Duane* concerned the boundaries of a parcel, not those of an easement. Likewise, the task of the court in the *Powers* was not to determine the boundaries of an easement, but to determine whether an easement existed or not. Nonetheless, both cases are instructive in this matter because they involved choosing between a description in an incorporated plat map and inconsistent information elsewhere in the conveyance.

After careful reconsideration, the Court also finds that the *Hull* case, upon which the Court relied in its previous opinion, is more consistent with the Restatement's deference to intent than with a rule requiring strict adherence to a map incorporated into a deed. Although *Hull* does state that a property owner is bound by the description contained in the deed, the opinion goes on to discuss the intent of the grantor, and then the expectations of the parties:

> But perhaps a more satisfactory criterion [than the preclusive effect of the deed] ... is the intent of [the grantor], if it can be ascertained. Did he intend to submit to the decision of the commissioners? or [sic] did he intend to reserve to himself his ancient claim, according to his deed from [the previous owner].
>
> There is no evidence of any intention on the part of [the grantor] to retain any portion of the land, or any interest in it, after the conveyance ... nor is there any ground to infer such intent....
>
> ....
>
> But a consideration still more decisive is, that it is apparent from all the deeds, that the parties understood, that precisely the same land was conveyed by all the descriptions adopted....

*Hull*, 7 Vt. 100, 1835 WL 996, at *8. In *Hull*, consideration of the parties' intent mandated the same result as did adherence to the map referenced in the deed. *See id.* at *7–8. As is apparent from the language quoted above, however, the *Hull* court deemed the parties' intent the more important factor.

The Court further finds that American Jurisprudence (Second Edition) supports determining the beach easement boundary in accordance with the parties' intent. Section 2 of American Jurisprudence (Boundaries), titled "General Rules of Construction and Effect of Intention," states in part:

> The intention of the parties controls and is to be followed when the location of the boundary lines of the land is uncertain by reason of inconsistent or conflicting descriptive calls in the conveyance which cannot be explained by any competent evidence. Upon ascertaining the parties' intention, all other rules of construction and interpretation must yield to that intention.

12 Am.Jur.2d Boundaries § 2 (1997). In giving controlling weight to the parties' intent, this section takes essentially the same position as section 4.1 of the Restatement (Third) of Property (Servitudes). Moreover, the two American Jurisprudence sections previously relied upon by the Court are not inconsistent with this approach. Section 5 of American Jurisprudence (Boundaries) provides that, if a map has been incorporated into the deed, the grantee takes title according to the boundaries as set forth in the map. *Id.* § 5. But that provision also explains that the boundaries may be challenged; they "are conclusive upon the parties unless or until a reformation of the deed is secured." *Id.* Section 5 thus implicitly contemplates situations in which the map referenced in the deed will be found in error, and a court must resort to other means of determining the parcel's boundaries. The other section cited by the Court, section 135 of American Jurisprudence (Records and Recording Laws), states that when a recorded deed incorrectly describes the parcel's boundaries, the record is good only as to the land described. Again, the owner of the parcel is not bound by the error; nothing in this section prevents an action for determination of the parcel's true boundaries.

To be sure, other cases may be cited in support of the Court's original decision. *See, e.g., Ollison v. Village of Climax Springs*, 916 S.W.2d 198, 204 (Mo.1996) (en

banc) ("Where parties take record title by deeds referring to a plat, they cannot dispute the dimensions of their respective properties as shown on the plat or question the location of their respective properties with regard to each other as shown on the plat."); *Hammond v. Lindsay*, 277 S.C. 182, 184, 284 S.E.2d 581, 582 (1981) (per curiam) ("As a general rule, when maps, plats, or field notes are referred to in a grant or conveyance, they are to be regarded as incorporated into the instrument and are usually held to furnish the true description of the boundaries of land.").[11]

The Court is satisfied, however, that the weight of common law—as reflected in the above discussion of *Powers, Duane, Hull,* and American Jurisprudence—requires that the easement boundaries be determined in accordance with the parties' intent. On that basis, it is apparent that the Court's Opinion of July 15, 1999, failed to apply controlling law. The Court will therefore do so now. Because the case law reflects the general principles set forth in section 4.1 of the Restatement (Third) of Property, the Court will analyze the parties' intent without specifically relying on section 4.1.

## C. Intent of the Parties

In determining the intended boundaries of the beach easement, the key convey-

---

**11.** The facts of *Ollison* are distinguishable from the circumstances of this case. In *Ollison* the grantee's deed did not contain, either directly or indirectly, any conflicting descriptions of the property; the deed described the parcel only by reference to the town's original plat, which proved defective. *Id.* at 202–03. In contrast, the deeds in this case contain conflicting references to the *Harthman* Partitioning Decree and to a fifty-foot easement. The deeds in *Duane, Hull,* and *Powers* also contained inconsistent information. *See Duane,* 455 So.2d at 757–58 (plat map conflicted with monuments described in deed);

*Hull,* 7 Vt. 100, 1835 WL 996, at *5–7 (potential conflict between description in deed and reference to commissioner's survey); *Powers,* 49 N.C.App. at 659–60, 272 S.E.2d at 401–02 (deed did not reserve an easement, but plat map referenced in deed described an easement). Where the deed contains no inconsistent indicia of the parties' intent, it makes sense that courts should not further concern themselves with what the parties meant to do. But, as is the subject of this discussion, an inquiry into intent may well be appropriate where the deed itself is equivocal.

ances are the deeds from various Harthman heirs to Joy Stillman, in the case of one parcel, and to the St. John Land Investment Partnership, in the case of the other three. As heirs of parties to the partition action, the Harthman grantors inherited parcels subject to an easement running inland to the vegetation berm line. That easement is erroneously described in the original survey map, which was created pursuant to the Partitioning Decree, as extending a flat fifty feet inland. The Court so ruled on both points in its Opinion of July 15, 1999, and will not revisit those portions of its decision here. *See Peter Bay*, 58 F.Supp.2d at 644–45. The question therefore becomes whether the Harthman grantors, by reference to the first erroneous map as well as maps based upon it, intended to convey all of their respective interests in the parcels, or to burden the parcels with an expanded shoreline easement.

As an initial matter, the Court could not locate, in the sizable record of this case, the original conveyance by a Harthman heir of parcel 13, which is now held by the Andrews St. John Trust.[12] Additionally, as noted earlier, the Trust did not ask the Court to reconsider its July 15, 1999, Opinion. Without a deed from which to cull some indicia of intent, and in the absence of a motion by the affected party, the Court will not disturb its earlier judgment concerning parcel 13.

Moving on to the other parcels, there is no question that the December 9, 1986, deed from Sammy Harthman to the St. John Land Investment Partnership— which conveyed the property now held by Mr. Burgamy and the Godinezes—contains

conflicting descriptions of the property conveyed. On the one hand, the deed refers to the erroneous survey map, designated D9–1330–T77, which indicates a fifty-foot easement encumbering the beachfront parcels. (Henry et al. Mem. Points & Auth. Supp. Cross–Mot. Summ. J., Ex. 1.) On the other hand, the following statement appears in a bottom corner of the map: "This division is made pursuant to the partition decree issued in Civil No. 414–1970 in the District Court of the V.I., Judge Young." (*Id.*) Additionally, the partnership's deed states that the conveyance consists of "the same premises adjudicated ... to Sammy E. Harthman, Sr., by Memorandum Opinion and Partition Decree in the matter of Sammy (Lemme) Harthman, Sr., vs [sic] Vernon E. Harthman, et al., filed August 21, 1975, in the District Court of the Virgin Islands ...." (Mem. Supp. Godinez Mot. Recons., Ex. A .) The parcels owned by Mr. Burgamy and the Godinezes—parcels 1 and 2A, respectively—are a portion of the property once held by the partnership. The deeds of the Godinezes and Dués, Mr. Burgamy's predecessor in title, describe these parcels by reference to map D9–4391–T88, which specifies a "50' Beach Easement per PWD # D9–1330–T77." (Mem. Supp. Godinez & Dué Mot. Summ. J., Exs. B, C, D.)

Joy Stillman's August 26, 1992, deed from Vernon E. Harthman and John Harthman likewise contains inconsistent descriptive information. The deed describes her property, parcel 10A, by reference to maps D9–5369–T92 and D9–1331–T77. (Stillman Opp'n Intervening Pls.' Mot. Summ. J., Ex. F.) The first map

---

12. The Partitioning Decree granted parcel 13 (then parcel 5A) to Amiot Harthman, *Harthman*, 12 V.I. at 157, and the St. John Land Investment Partnership thereafter acquired the land. The partnership conveyed parcel 13A to the Andrews St. John Trust by deed

dated July 2, 1992. *Peter Bay*, 58 F.Supp.2d at 645. The deed describes the parcel by reference to map D9–5259–T92, which shows an "Existing 50' Beach Easement Per D9–1330–T77." *Id.* at 646.

shows a fifty-foot easement and cites as its basis map D9–1330–T77. (Derr Suppl. Aff. Supp. Pls.' Mot. Summ. J., Attachment.) The second reference is apparently intended to be to map D9–1330–T77, since Map D9–1331–T77 depicts other parcels in Peter Farm.[13] But in addition to referring to the maps, the Stillman deed indicates that the parcel is the same as that inherited from Vernon Harthman, and that the property is subject to the "covenants, restrictions, easements, and agreements of record, including the terms, conditions, restrictions, and obligations of the Memorandum Opinion and Partition Decree dated August 21, 1975 in District Court Civil No. 414–1970 . . . ." (Stillman Opp'n Intervening Pls.' Mot. Summ. J., Ex. F.)

The parties have gone to great lengths to explain these discrepancies. As discussed in Part III.A. 1 of this Opinion, Peter Bay has argued that the Harthman grantors consciously incorporated the erroneous map into the various deeds, with the intent of expanding the existing beach easement—to the benefit of all Peter Farm parcel owners. Movants, while asserting that the grantors never intended to increase the size of the easement, have argued in the alternative that the most the grantors did was reserve a fifty-foot easement benefitting themselves.

The Harthman grantors certainly had the power to expand the beach easement, or create an additional easement, to benefit either third parties or themselves. *See generally* Jon W. Bruce & James W. Ely, Jr., The Law of Easements and Licenses in Land ¶ 3.05 (rev. ed.1995) (reservation of easement benefitting grantor); *id.*

¶ 3.06 (reservation of easement in favor of third party); *id.* ¶ 7.02[4] (expansion of easements and grants of multiple easements). It is difficult to believe they intended to do so, however. The deeds themselves—as opposed to the maps they reference—contain absolutely no language indicating expansion of the easement or creation of a new easement. Nor do the deeds shed any light on the identity of the intended beneficiaries of that action.

Even in the absence of any expression of intent in the deeds, the Court might be willing to find an expanded or additional easement if the maps referenced by the deeds unequivocally showed such additions. But that is not the case here. Map D9–1330–T77 shows a fifty-foot easement, but also makes indirect reference to the berm-line easement by citing the Partitioning Decree. The other maps referenced in the movants' deeds do nothing to clarify the parties' intent, since they cite the ambiguous map D9–1330–T77. Moreover, the similarity of the deeds is telling. It defies credulity to suggest that different Harthman grantors, in separate conveyances, intended to add to the easement but, in uniform fashion, indicated their intent only by referencing maps that cited as their basis, either directly or indirectly, the Partitioning Decree.

In addition to the deeds, the circumstances surrounding the conveyances strongly suggest that the Harthman grantors did not intend to add to the beach easement. There is no ready explanation why separate Harthman grantors would reserve for their own benefit an odd-shaped strip of land between the beach

13. Map D9–1331–T77 does not seem to have been placed into the record of this case; if it has, the parties have not directed the Court to its whereabouts. The 1986 deed from Sammy Harthman, however, refers to the map in connection with parcels 7, 8, and 9, which have

nothing to with this action. (Mem. Supp. Godinez Mot. Recons., Ex. A.) The property now owned by Joy Stillman—parcel 10A—was known as parcel 4A at the time and had been included in map D9–1330–T77.

and the homes of future owners of the property. The fact that neither they nor their heirs have intervened in this litigation to protect such an interest is evidence that the interest never existed. Additionally, there is no evidence of negotiations or discussions between the grantors and other Peter Farm property owners regarding expansion of the easement for the owners' collective benefit. It seems unlikely that the grantors would expand the easement for the collective benefit of Peter Farm owners without either doing so expressly in the deed or mentioning such an intent to other owners.

The only plausible explanation of the inconsistent deed language and map references, then, is simple error. The Harthman grantors intended to convey their entire interests in the land, but in doing so referred to maps that turned out to be erroneous. This interpretation is consistent with all the descriptive information contained in the deeds besides the map references to a fifty-foot easement. By contrast, finding a fifty-foot easement would require the Court to disregard several statements in each deed and accompanying map which indicate that the parcels are the same properties conveyed to the original owners under the Partitioning Decree. Finding a larger easement would also require the Court to ignore the circumstances surrounding the deeds. The Court therefore finds, as a matter of law, that the parties to the original conveyances intended that the parcels be subject only to the easement created in the *Harthman*

decree—i.e., an easement running inland to the vegetation berm line.[14]

## IV. *CONCLUSION*

For the reasons stated herein, the Court vacates its Opinion and Order of July 15, 1999, insofar as they relate to the boundary of the beach burdening movants' parcels. The Court declares those parcels to be subject to an easement extending inland from the 1975 low-water mark to the vegetation berm line. The Court's earlier determinations concerning the beach easements burdening the Hall and Andrews St. John Trust parcels remains intact.

**THIS MATTER** having come before the Court on the motions of the Stillmans, Godinezes, and Dués ("movants") for reconsideration of the Court's July 15, 1999, Opinion and Order; and

The Court on July 12, 2000, having granted the motions for reconsideration of the Opinion and Order, insofar as they declared that the movants' beachfront parcels, as well as the beachfront parcel owned by the Andrews St. John Trust, were subject to a flat fifty-foot beach easement; and

The Court having heard oral argument on the beach easement issue on August 4, 2000; and

The Court having reviewed the record and the submissions of the parties; and

For the reasons set forth in the Court's Opinion of this date;

**IT IS** this 22nd day of August, 2001, **HEREBY**

14. Parenthetically, the Court notes that while its decision today is based on an assessment of the parties' intent, limiting the easement to the berm line is consistent with the Open Shorelines Act, 12 V.I.C. § 401 *et seq.* The Act provides that the public must have access to beach area measured "from the seaward line of low tide, running inland a distance of fifty (50) feet; or to the extreme seaward boundary of natural vegetation which spreads continuously inland; or to a natural barrier; *whichever is the shortest distance*" *Id.* § 402(b) (emphasis added). In its previous opinion, the Court noted that "[a]s much as the Legislature wanted to preserve shoreline access ... it wanted to intrude as little as possible upon the owners of beachfront property." *Peter Bay,* 58 F.Supp.2d at 644.

**ORDERED** that the Court's Opinion and Order of July 15, 1999, are **VACATED**, insofar as they declare that parcels 1, 2A, and 10A of Peter Farm, Estate Peter Bay, 2aa Maho Quarter, St. John, are subject to an easement extending fifty feet inland from the 1975 low-water mark;[1] and

**IT IS FURTHER ORDERED** that parcels 1, 2A, and 10A of Peter Farm are subject to an easement extending from the 1975 low-water mark to the vegetation berm line, as articulated in the Partitioning Decree issued on August 21, 1975, in *Harthman v. Harthman*, 12 V.I. 142 (D.V.I.1975).

---

1. Thus, the Court's July 15, 1999, Opinion and Order stand insofar as they determine that parcel 16 of Peter Farm is subject to an easement extending from the 1975 low-water mark to the vegetation berm line. The Court's determination that parcel 13A is burdened by a flat fifty-foot easement also remains intact, given that the parcel's owner, the Andrews St. John Trust, has not moved for reconsideration and that the deed does not appear in the materials presented for the Court's review.